## ANDRES v. UNITED STATES.

### No. 10815.

Circuit Court of Appeals, Ninth Circuit.

Aug. 14. 1947.

Writ of Certiorari Granted Dec. 22, 1947.

See 68 S.Ct. 266.

lulu, T. H., Frank J. Hennessy, U. S. Atty., and Robert B. McMillan, Asst. U. S. Atty., both of San Francisco, Cal., for appellee.

Before GARRECHT, MATHEWS, and HEALY, Circuit Judges.

HEALY, Circuit Judge.

This appeal involves a statute of the United States, Criminal Code § 330, 18 U.S.C.A. § 567, providing, so far as pertinent, that in all cases where an accused is found guilty of the crime of murder in the first degree "the jury may qualify their verdict by adding thereto 'without capital punishment'; and whenever the jury shall return a verdict qualified as aforesaid, the person convicted shall be sentenced to imprisonment for life."[1]

On the trial appellant was convicted of first degree murder. The jury's verdict was not qualified, and the accused was given the death sentence in conformity with § 275 of the Criminal Code, 18 U.S.C.A. § 454, providing that every person guilty of such offense shall suffer death. Errors are assigned in respect of certain of the court's instructions. While no exceptions were taken below or objections made to these instructions, the gravity of the case is such that the assignments ought nevertheless be considered.

The court charged the jury that they might return a qualified verdict by adding the words "without capital punishment," in which event the accused would not suffer death; that the power so to qualify was conferred solely upon them and that the court could not prescribe any rule defining its exercise, the entire matter in this respect being committed to their judgment; that even though they were in unanimout agreement beyond a reasonable doubt of the defendant's guilt as charged they might add the qualification; and, finally, that they might so qualify the verdict no matter what the evidence was and without regard to the existence of mitigating circumstances.

The complaint in respect of these instructions is bottomed on Winston v. United States, 172 U.S. 303, 19 S.Ct. 212, 43 L.Ed. 456, the argument being that the

O. P. Soares, of Honolulu, T. H., for appellant.

Ray J. O'Brien, U. S. Atty., and Edward A. Towse, Asst. U. S. Atty., both of Hono-

---

[1] The statute was enacted in 1897, 29 Stat. 487.

court should have included in the charge the verbiage of the opinion of the Supreme Court in the Winston case in a passage discussing the broad power conferred by the statute upon the jury.[2] However, it is evident from a reading of the excerpt that the Court did not intend to hold that its comments were necessary or appropriate matter to include in an instruction. The contrary is intimated. The actual holding is that the court is without authority to prescribe rules for the jury defining or circumscribing their exercise of the right conferred; and the error found in the three cases under review was, not that the trial courts had said too little, but that they had said too much. We are satisfied that the instructions, in this instance, adequately advised the jury of their unlimited right to extend clemency for any reason that might appeal to them.

■ A related claim of error grows out of an admonition given the jury that they must not permit sympathy, or passion or prejudice to affect their judgment, but must determine the case within the narrow channel of right and justice, keeping in mind the charge, the testimony and the law. The argument is that under the holding in Winston v. United States, supra, sympathy may properly sway the jury in the exercise of their power to qualify, and that the instruction had the effect of unduly narrowing the grounds upon which a qualified verdict might be returned. We do not agree. The admonition was given in what may be termed the prologue to the instructions. This introductory matter dealt in general terms with the differing functions of the judge, counsel and the jury in the trial of the case. A study of these introductory remarks persuades us that the instruction complained of could hardly have been understood otherwise than as having reference to the duty of the jury in arriving at their decision on the primary question before them, namely, whether the accused was guilty of the crime charged. It was not until much later in the charge that the court commented on the power to qualify the verdict, and its comments on the subject could leave the jury in no doubt that relief from the death penalty was a matter committed without limitation to their discretion.

A later incident in the trial confirms the justice of this view. After the jury had been sent out they returned to inquire whether, in the event of a verdict of first degree murder, it would be mandatory on the judge to sentence the accused to death, or whether the judge might use his own discretion. The reply was that in the absence of a qualified verdict the death sentence must of necessity be imposed. The court then read once more to the jury its instructions concerning their power to qualify the verdict, thus stressing at a crucial moment the unfettered nature of the right.

A third instruction bearing on the statutory power was that before the jury may return a qualified verdict of first degree murder without capital punishment their decision to do so must be unanimous. This instruction is attacked on the ground that there is no statutory or other authority for it.

---

[2] The passage in Winston v. United States, 172 U.S. 303, 312–313, 19 S.Ct. 212, 215, 43 L.Ed. 456, is as follows: "The right to qualify a verdict of guilty by adding the words 'without capital punishment' is thus conferred upon the jury in all cases of murder. The act does not itself prescribe, nor authorize the court to prescribe, any rule defining or circumscribing the exercise of this right, but commits the whole matter of its exercise to the judgment and the consciences of the jury. The authority of the jury to decide that the accused shall not be punished capitally is not limited to cases in which the court or the jury is of opinion that there are palliating or mitigating circumstances. But it extends to every case in which, upon a view of the whole evidence, the jury is of opinion that it would not be just or wise to impose capital punishment. How far considerations of age, sex, ignorance, illness, or intoxication. of human passion or weakness, of sympathy or clemency, or the irrevocableness of an executed sentence of death, or an apprehension that explanatory facts may exist which have not been brought to light, or any other consideration whatever, should be allowed weight in deciding the question whether the accused should or should not be capitally punished, is committed by the act of Congress to the sound discretion of the jury, and of the jury alone."

■ The instruction presents the one difficult problem in the case—not because we believe the ground on which it is assailed may be well taken, but for a different reason. The charge is clearly correct so far as it goes. As is generally recognized in the federal system, and as this court observed in Smith v. United States, 9 Cir., 47 F.2d 518, 520, unanimity in a verdict, unless otherwise provided by statute, is one of the incidents and essentials of a jury trial. The requirement of unanimity extends to whatever verdict the jury may return—not to a portion of it only, but to all of it. Such was the holding in Smith v. United States, supra. We turn for a moment to the Smith decision.

In that case the jury, after submission of the matter, returned with a request for further instructions on the subject of the qualification of their verdict. One of the jurors inquired what the result would be if they were unable to agree upon the qualifying words, and the court replied that if they agreed on a verdict of guilty, but could not agree upon the qualifying words, the verdict would stand as guilty without qualification. Commenting on this charge, the court said, one judge dissenting, that in a criminal case the requirement of unanimity extends not alone to the question of guilt or innocence and to the degree of the crime where different degrees are prescribed, but to the kind or character of the punishment where that is left to the jury's determination. "The discretion of the jury," said the court, "is unlimited and unrestricted, and if, in the opinion of one or more of the jurors, it would not be just or wise to impose capital punishment, he, or they, are under no legal obligation to join in a verdict without qualification so long as that opinion remains, and an instruction from the court that such is their duty is erroneous, and, of course, prejudicial."

■ While it was suggested, on oral argument, that the opinion of the dissenting judge in the Smith case presents the better view, we see no reason to depart from the majority holding. The stand taken is not only the humane construction of the statute; it appeals to us as an interpretation more in harmony with the traditional spirit of the jury system, and with the legislative purpose as well. Cf. Winston v. United States, supra. It follows that the instruction given here, while correct so far as it went, did not completely expound the applicable law. A full exposition would have included the charge that before the jury may return a verdict of first degree murder without qualification, their decision to do so must in like manner be unanimous.

■ The problem posed by the record is whether it may fairly be thought that the jury were misled, that is, whether, because they were told only that they must be unanimous in returning a qualified verdict, they might have inferred that a like unanimity was not essential to the return of an unqualified one so long as they were in agreement on the main question of the defendant's guilt as charged in the indictment. We have studied the instructions to see whether, as a whole, they afford adequate ground for such an inference. We think they do not, hence, on this phase, we have concluded that a reversal would not be justified. Jurors ordinarily understand, without being told, that they are under no legal compulsion to join in a verdict with which they are in disagreement, either in whole or in part; and unless they are instructed to the contrary, as they were in Smith v. United States, supra, they may be relied upon to adhere to the common understanding of their ancient prerogative. But we do not rest our conclusion on that understanding alone. Following immediately upon the giving of the instruction in question was a flat charge that "the unanimous agreement of the jury is necessary to a verdict," and that "while a unanimous verdict is required it must be arrived at by each juror's voting as he believes the law and the evidence justifies him in voting." Although this admonition was couched in general terms, we are satisfied that it served to dispel any uncertainty that the immediately preceding charge might have engendered.

■ The final claim of error hardly justifies notice. It relates to a charge stating that the indictment was found by the grand jury on evidence "presented by the government alone" of such nature as to create in the minds of the grand jury a belief that a crime had probably been committed and that the defendant had probably

472

committed it. In other instructions on the subject, several of which were given at appellant's request, the court fully developed the proposition that the indictment was not to be taken in any sense as evidence of guilt, but was a mere accusation serving the formal purpose of framing the issues. The instructions on this matter tended, as they were designed to do, to protect the cause of the accused.

The judgment is affirmed.