## ANDRES *v.* UNITED STATES.

No. 431.   Argued February 5, 1948.—Decided April 26, 1948.

*O. P. Soares* argued the cause and filed a brief for petitioner.

*Vincent A. Kleinfeld* argued the cause for the United States. With him on the brief were *Solicitor General Perlman, Assistant Attorney General Quinn, Robert S. Erdahl* and *Philip R. Monahan.*

MR. JUSTICE REED delivered the opinion of the Court.

On December 17, 1943, the petitioner, Timoteo Mariano Andres, was indicted in the United States District Court for the Territory of Hawaii for murder in the first degree. 18 U. S. C. §§ 451, 452. The indictment recited that Andres "on or about the 23rd day of November, 1943, at Civilian Housing Area No. 3, Pearl Harbor, Island of Oahu, said Civilian Housing Area No. 3 being on lands reserved or acquired for the use of the United States of America . . . did . . . kill . . . Carmen Gami Saguid . . . ."

Andres was tried before a jury which returned this verdict:

"We, the Jury, duly empaneled and sworn in the above entitled cause, do hereby find the defendant, Timoteo Mariano Andres, guilty of murder in the first degree."

He was sentenced to death by hanging. He appealed his conviction to the Circuit Court of Appeals for the Ninth Circuit. That court affirmed the judgment of the lower court, unanimously. 163 F. 2d 468. A petition for a writ of certiorari was filed in this Court and that petition was granted. 332 U. S. 843.

Four questions were presented in the petition for certiorari. Three of these we do not consider of sufficient doubt or importance to justify an extended discussion. We shall dispose of them before we reach what is, for us, the decisive issue of this case.

Andres contends that 18 U. S. C. § 567,[1] as interpreted by *Winston* v. *United States,* 172 U. S. 303,[2] requires that the trial court explain to the jury the scope of their discretion in granting mercy to a defendant. In the *Winston* case, the judge had charged the jury that they could not qualify their verdict except ". . . in cases that commend themselves to the good judgment of the jury, cases that have palliating circumstances which would seem to justify and require it." 172 U. S. at 306. This Court held that instruction erroneous. The Court read the

---

[1] "In all cases where the accused is found guilty of the crime of murder in the first degree, or rape, the jury may qualify their verdict by adding thereto 'without capital punishment'; and whenever the jury shall return a verdict qualified as aforesaid, the person convicted shall be sentenced to imprisonment for life."

[2] In *Winston* v. *United States, supra,* the question presented was the proper construction of § 1 of the Act of January 15, 1897. 29 Stat. 487. 18 U. S. C. § 567, in its relevant part, has language identical to that of the earlier statute.

statute to place the question whether the accused should or should not be capitally punished entirely within the discretion of the jury; an exercise of that discretion could be based upon any consideration which appealed to the jury.[3] In the case now before us, the trial judge gave the instructions set forth in the margin.[4] It is clear that he

[3] 172 U. S. at 312–13:

"The right to qualify a verdict of guilty, by adding the words 'without capital punishment,' is thus conferred upon the jury in all cases of murder. The act does not itself prescribe, nor authorize the court to prescribe, any rule defining or circumscribing the exercise of this right; but commits the whole matter of its exercise to the judgment and the -consciences of the jury. The authority of the jury to decide that the accused shall not be punished capitally is not limited to cases in which the court, or the jury, is of opinion that there are palliating or mitigating circumstances. But it extends to every case in which, upon a view of the whole evidence, the jury is of opinion that it would not be just or wise to impose capital punishment. How far considerations of age, sex, ignorance, illness or intoxication, of human passion or weakness, of sympathy or clemency, or the irrevocableness of an executed sentence of death, or an apprehension that explanatory facts may exist which have not been brought to light, or any other consideration whatever, should be allowed weight in deciding the question whether the accused should or should not be capitally punished, is committed by the act of Congress to the sound discretion of the jury, and of the jury alone."

[4] "I instruct you that you may return a qualified verdict in this case by adding the words 'without capital punishment' to your verdict. This power is conferred solely upon you and in this connection the Court can not extend or prescribe to you any definite rule defining the exercise of this power, but commits the entire matter of its exercise to your judgment.

"I instruct you, gentlemen of the jury that even if you should unanimously agree from the evidence beyond all reasonable doubt that the defendant is guilty as charged, you may qualify your verdict by adding thereto 'without capital punishment' in which case the defendant shall not suffer the death penalty.

"In this connection, I further instruct you that you are authorized to add to your verdict the words 'without capital punishment,' and this you may do no matter what the evidence may be and without regard to the existence of mitigating circumstances."

left the question of the punishment to be imposed—death or life imprisonment—to the discretion of the jury. We hold that the trial judge's instructions on this issue satisfied the requirements of the statute.

It is next contended that the trial was unfair because the instructions quoted below [5] indicated to the jury that the indictment against the petitioner reflected a finding by the Grand Jury that he was probably guilty of the crime of murder in the first degree. Perhaps the italicized language in the charge, read out of context, is mis-

---

[5] "To the indictment which the grand jury returned against this defendant, this defendant entered a plea of not guilty. That is to say, he denied the charge stated in the indictment and placed himself upon his Country for the purpose of trial. The burden is upon the Government to show to your satisfaction, gentlemen, that this defendant is guilty beyond every reasonable doubt. This burden does not change at any time during the course of the trial. The defendant is presumed innocent of the charge stated in the indictment until he is proven guilty by the degree of proof to which I have previously referred. The presumption of innocence in favor of the defendant is not a mere formality to be disregarded by the jury at its pleasure. It is a substantive part of our criminal law. The presumption of innocence continues with the defendant throughout the trial until you are convinced by the evidence that he is guilty beyond every reasonable doubt.

"When the indictment was returned by the grand jury against this defendant, the defendant had had no opportunity to present his side of the case. *The indictment was found by the grand jury upon evidence presented to it by the Government alone, and created in the minds of the grand jury a belief that it was probable that a crime had been committed and that this defendant probably committed that crime.*

"*Upon the evidence [which] it heard, the grand jury indicted this defendant, thereby indicating that it was probable that a crime had been committed, which should be disposed of in this court where both sides could be heard, and this is the stage which we have now reached.*

"I advise you, gentlemen, that it is the indictment in this case which frames the issues of the case."

Petitioner complains of the italicized language.

leading and it might have been better to omit it completely. However, when the language complained of is read in context, it seems to us that the petitioner had no real ground for complaint. No material error resulted from the words.

The petitioner also argues that the District Court for the Territory of Hawaii did not have the power to sentence him to death by hanging. 18 U. S. C. § 542 provides: "The manner of inflicting the punishment of death shall be the manner prescribed by the laws of the State within which the sentence is imposed. . . . If the laws of the State within which sentence is imposed make no provision for the infliction of the penalty of death, then the court shall designate some other State in which such sentence shall be executed in the manner prescribed by the laws thereof." The petitioner contends that the phrase "laws of the State" limits the statute to the forty-eight states and, consequently, provides for no method of inflicting the death penalty where that sentence is imposed by a district court sitting in a Territory.[6] We reject that contention as being without merit. In many contexts "state" may mean only the several states of the United States. Here, however, we hold that its meaning includes the Territory of Hawaii.

[6] Section 542, before its amendment in 1937, read: "The manner of inflicting the punishment of death shall be by hanging." 35 Stat. 1151. The changes in the statute from that language to the present language were prompted by the fact that "Many States . . . use[d] more humane methods of execution, such as electrocution, or gas. . . . [Therefore,] it appear[ed] desirable for the Federal Government likewise to change its law in this respect . . . ." H. R. Rep. No. 164, 75th Cong., 1st Sess., 1. Since Congress was well aware that federal courts had jurisdiction in territories and possessions, it would be incongruous to hold that they did not use the word "state" to cover such areas. The purpose of this legislation was remedial: the adoption of the local mode of execution. The intent of Congress would be frustrated by construing the statute to create that hiatus for which the petitioner contends.

The last and most difficult issue raised by Andres is the question of the propriety of those instructions by which the trial judge attempted to explain to the jury the requirements of unanimity in their verdict. This issue is a composite of two problems: (1) The proper construction of 18 U. S. C. § 567; and (2) the consideration of whether the instruction given clearly conveyed to the jury the correct statutory meaning.

Section 567 of 18 U. S. C. reads as follows: "In all cases where the accused is found guilty of the crime of murder in the first degree . . . the jury may qualify their verdict by adding thereto 'without capital punishment'; and whenever the jury shall return a verdict qualified as aforesaid, the person convicted shall be sentenced to imprisonment for life." If a qualified verdict is not returned, the death penalty is mandatory.[7] The Government argues that § 567 properly construed requires that the jury first unanimously decide the guilt of the accused and, then, with the same unanimity decide whether a qualified verdict shall be returned. As the statute requires the death penalty on a verdict of guilty, the contention is that the jury acts unanimously in finding guilt and the law exacts the penalty. It follows, that if all twelve of the jurors cannot agree to add the words "without capital punishment," the original verdict of guilt stands and the punishment of death must be imposed. The petitioner contends that § 567 must be construed to require unanimity in respect to both guilt and punishment before a verdict can be returned. It follows that one juror can prevent a verdict which requires the death penalty, although there is unanimity in finding the accused guilty of murder in the first degree. The Circuit Court of Appeals held that unanimity of the jury was required both as to guilt

---

[7] 18 U. S. C. § 454: "Every person guilty of murder in the first degree shall suffer death. . . ."

and the refusal to qualify the verdict by the words "without capital punishment." It interpreted the instructions, however, as requiring this unanimity.

The First Congress of the United States provided in an Act of April 30, 1790: "That if any person or persons shall, within any fort, arsenal, dock-yard, magazine, or in any other place or district of country, under the sole and exclusive jurisdiction of the United States, commit the crime of wilful murder, such person or persons on being thereof convicted shall suffer death." [8] This was the federal law, in the respects here relevant, until 1897. In that year Congress passed and the President signed the Act of January 15, 1897.[9] That statute provided:

> "That in all cases where the accused is found guilty of the crime of murder or of rape under sections fifty-three hundred and thirty-nine or fifty-three hundred and forty-five, Revised Statutes, the jury may qualify their verdict by adding thereto 'without capital punishment;' and whenever the jury shall return a verdict qualified as aforesaid the person convicted shall be sentenced to imprisonment at hard labor for life."

It is this language, substantially unchanged, which we must construe in this case.[10]

The reports of the Congressional Committees and the debates on the floor of Congress do not discuss the particular problem with which we are now concerned.[11]

---

[8] 1 Stat. 113.

[9] 29 Stat. 487.

[10] The Act of January 15, 1897, was incorporated into the Criminal Code of 1909 as § 330 with changes that are here unimportant. 35 Stat. 1152. Section 330 of the Criminal Code is now 18 U. S. C. § 567.

[11] Dissatisfaction over the harshness and antiquity of the federal criminal laws led in 1894 to the introduction by N. M. Curtis of New York of a bill to reduce the number of crimes for which the

There are, however, many expressions which indicate that the general purpose of the statute was to limit the severity of the old law.[12]

Unanimity in jury verdicts is required where the Sixth and Seventh Amendments apply.[13]  In criminal cases this requirement of unanimity extends to all issues—character or degree of the crime, guilt and punishment—which are left to the jury.  A verdict embodies in a single finding the conclusions by the jury upon all the questions submitted to it.  We do not think that the grant of authority to the jury by § 567 to qualify their verdict permits a procedure whereby a unanimous jury must first find guilt and then a unanimous jury alleviate its rigor.  Therefore, although the interpretation of § 567 urged by the Government cannot be proven erroneous with certainty, since the statute contains no language specifically requiring una-

---

penalty of death could be imposed and to give the jury the right to "qualify their verdict [in death cases] by adding thereto 'without capital punishment.'"  See H. R. Rep. No. 545, 53d Cong., 2d Sess. The bill as introduced divided murder into degrees, §§ 1, 2 of H. R. 5836, 53d Cong., 2d Sess.; it was passed by the House without any substantial changes.  27 Cong. Rec. 823.  After severe amendment it was favorably reported to the Senate by the Committee on the Judiciary.  See S. Rep. No. 846, 53d Cong., 3d Sess.  These amendments, however, did not affect § 5 of the original bill, the section which provided for qualified verdicts; that section was retained and became § 1 of the new bill.  *Id.* at p. 2.  The committee, however, "thought it inadvisable to make degrees in the crime of murder, or attempt new definitions."  *Ibid.*  Consequently, it struck out the sections of the original bill which concerned themselves with these matters.  The Committee Report stated that "The leading object of this bill is to diminish the infliction of the death penalty by limiting the offenses upon which it is denounced, and by providing in all cases a latitude in the tribunal which shall try them to withhold the extremest punishment when deemed too severe."  *Id.* at p. 1. The bill as amended was passed by the Senate and later by the House.

[12] See note 11, *supra;* 28 Cong. Rec. 2649–2650, 3098–3111, 3651.

[13] See *American Publishing Co.* v. *Fisher,* 166 U. S. 464.

nimity on both guilt and punishment before a verdict can be brought in, we conclude that the construction placed upon the statute by the lower court is correct— that the jury's decision upon both guilt and whether the punishment of death should be imposed must be unanimous. This construction is more consonant with the general humanitarian purpose of the statute and the history of the Anglo-American jury system than that presented by the Government.[14]

The only question remaining for decision is whether the instructions given by the trial judge clearly conveyed to the jury a correct understanding of the statute. There was a general charge that "the unanimous agreement of the jury is necessary to a verdict." Later, and the instructions on the specific issue under consideration can best be understood by the colloquy, the following took place:

"(At 3:45 o'clock, p. m., the jury returned to the courtroom, and the following occurred:)

"The Court: Note the presence of the jury and the defendant together with his attorney. I am advised by the bailiff that the jury wishes to ask the Court a question. Which gentlemen [sic] is the foreman— you, Mr. Ham? You are Mr. Ham?

"The Foreman: . . . The members of the jury would like to know if a verdict of guilty in the first degree was brought in, whether it would be mandatory on the part of the Judge to sentence the man to death, or hanging, or use his own discretion.

"The Court: Just a minute. I want to be right in my answer. You may sit down. Will the counsel come to the bench, please? (Discussion off the record.)

---

[14] This conclusion is supported by *Smith* v. *United States,* 47 F. 2d 518, which, with the exception of the present case, appears to be the only federal decision on this question.

"The Court: Gentlemen of the Jury, the statute, as I recall, answers that question, but I wanted to look at it once again before I gave you a positive answer. The answer to the question is that, in the absence of a qualified verdict, if the verdict is guilty of murder in the first degree, the Court has no discretion, for the statute provides in such event that the person so convicted of such an offense—murder in the first degree—shall suffer the punishment of death. As I told you in your instructions, there is another Federal statute which enables you gentlemen to qualify your verdict and to add, in the event you should find the person guilty of murder in the first degree, to add to that verdict, I repeat, the phrase 'without capital punishment.' In that event the man, of course, under the statute so convicted would not suffer the punishment of death but it would life imprisonment, as I recall it under the statute.

"Does that answer your question?

"The Foreman: Yes.

"The Court: Don't discuss your problems here, but if it is an answer to your question, you gentlemen can retire to your jury room if there are no other questions.

"The Foreman: No other.

"The Court: Counsel have asked me to reread the instructions to you on that particular point as an amplification of my answer to your question. Will you bear with me just a moment until I find that instruction? I will reread one or two instructions to you which bear on the question which you have asked:

" 'You may return a qualified verdict in this case by adding the words "without capital punishment" to your verdict. This power is conferred solely upon

you and in this connection the Court can not extend or prescribe to you any definite rule defining the exercise of this power, but commits the entire matter of its exercise to your judgment.'

" 'Even if you should unanimously agree from the evidence beyond all reasonable doubt that the defendant is guilty as charged, you may, as I have said, qualify your verdict by adding thereto "without capital punishment," in which case the defendant shall not suffer the death penalty.'

" 'In this connection, I further instruct you that you are authorized to add to your verdict the words "without capital punishment," and this you may do no matter what the evidence may be and without regard to the existence of mitigating circumstances.'

"And, finally, you will recall I said that you are instructed that before you may return a qualified verdict of murder in the first degree without capital punishment, that your decision to do so must, like your regular verdict, be unanimous."

The Government concedes that, if the petitioner's interpretation of § 567 is accepted, these instructions were inadequate; and we find ourselves in agreement with this concession. The court below concluded that the instructions were proper and that they did not mislead the jury.[15] It based its conclusion upon two factors: (1) the common understanding of jurors that "they are under no legal compulsion to join in a verdict with which they are in disagreement, either in whole or in part . . ."; [16] and (2) the general admonition of the trial judge that "the unanimous agreement of the jury is necessary to a verdict." [17]

---

[15] *Andres* v. *United States,* 163 F. 2d 468, 471.

[16] *Id.* at p. 471.

[17] *Ibid.*

It seems to us, however, that where a jury is told first that their verdict must be unanimous, and later, in response to a question directed to the particular problem of qualified verdicts, that if their verdict is first-degree murder and they desire to qualify it, they must be unanimous in so doing, the jury might reasonably conclude that, if they cannot all agree to grant mercy, the verdict of guilt must stand unqualified. That reasonable men might derive a meaning from the instructions given other than the proper meaning of § 567 is probable. In death cases doubts such as those presented here should be resolved in favor of the accused. The context of § 567 does not defy accurate and precise expression. For example: An instruction that a juror should not join a verdict of guilty, without qualification, if he is convinced that capital punishment should not be inflicted, would have satisfied the statute and protected the defendant. Or the jury might have been instructed that its conclusion on both guilt and punishment must be unanimous before any verdict could be found.

As we are of the opinion that the instructions given on this issue did not fully protect the petitioner, the judgment of the lower court is reversed and the case is remanded for a new trial.

*Reversed.*

Mr. Justice Frankfurter, concurring.

Having had more difficulty than did my brethren in reaching their result, I deem it necessary to state more at length than does the Court's opinion the reasons that outweigh my doubts, which have not been wholly dissipated.

This case affords a striking illustration of the task cast upon courts when legislation is more ambiguous than the limits of reasonable foresight in draftsmanship justify. It also proves that when the legislative will is clouded,

▇▇▇▇▇▇▇▇▇▇

what is called judicial construction has an inevitable element of judicial creation. Construction must make a choice between two meanings, equally sustainable as a matter of rational analysis, on considerations not derived from a mere reading of the text.

For the first hundred years of the establishment of this Government one guilty of murder in the first degree, under federal law, was sentenced to death. Since 1897 a jury, after it found an accused "guilty of the crime of murder in the first degree . . . may qualify their verdict by adding thereto 'without capital punishment;' and whenever the jury shall return a verdict qualified as aforesaid, the person convicted shall be sentenced to imprisonment for life." Act of January 15, 1897, 29 Stat. 487, as amended, 35 Stat. 1151, 1152, § 330 Criminal Code, 18 U. S. C. § 567.

The statute reflects the movement, active during the nineteenth century, against the death sentence. The movement was impelled both by ethical and humanitarian arguments against capital punishment, as well as by the practical consideration that jurors were reluctant to bring in verdicts which inevitably called for its infliction. Almost every State passed mitigating legislation.[1] Only five States met the doubts and disquietudes about capital punishment by its abolition. Most of the other States placed in the jury's hands some power to relieve from a death sentence. But the scope of a jury's power to save one found guilty of murder in the first degree from a death sentence is bound to give rise to a problem of statutory construction when the legislation does not define the power with explicitness.

A legislature which seeks to retain capital punishment as a policy but does not make its imposition after a find-

---

[1] For references to the State legislation see Appendix, pp. 767–770.

ing of guilty imperative has these main choices that leave little room for construction:

(1) Legislation may leave with the jury the duty of finding an accused guilty of murder in the first degree but give them the right of remission of the death sentence, provided there is unanimous agreement on such remission. Any juror, of course, has it in his power to deadlock a jury out of sheer wilfulness or unreasonable obstinacy. But under such a statute the duty laid upon his conscience is to find guilt if there is guilt. The jury can save an accused from death only if they can reach a unanimous agreement to relieve from the doom.

(2) The legislature may not require unanimous agreement on remission of the death sentence, but may make such remission effective by a majority vote of the jury, or, as in the case of the Mississippi statute, it may expressly provide that

> "Every person who shall be convicted of murder shall suffer death, unless the jury rendering the verdict shall fix the punishment at imprisonment in the penitentiary for the life of the convict; or unless the jury shall certify its disagreement as to the punishment . . . in which case the court shall fix the punishment at imprisonment for life." (Miss. Code Ann. § 2217 (1942).)

(3) The legislature may require the jury to specify the punishment in their verdict. Under such legislation it is necessary for the jury's verdict not only to pronounce guilt but also to prescribe the sentence.

(4) The jury may be authorized to qualify the traditional verdict of guilty so as to enable the court to impose a sentence other than death. This may be accomplished by giving such discretionary power to the court *simpliciter,* or upon recommendation of mercy by the jury.

None of these types of legislation would leave any reasonable doubt as to the power and duty of a jury. Unfortunately, the alleviating federal legislation of 1897, to which the Court must now give authoritative meaning, was not cast in any one of the foregoing forms. Congress expressed itself as follows:

> "In all cases where the accused is found guilty of the crime of murder in the first degree, or rape, the jury may qualify their verdict by adding thereto 'without capital punishment;' and whenever the jury shall return a verdict qualified as aforesaid, the person convicted shall be sentenced to imprisonment for life." (29 Stat. 487, as amended, 35 Stat. 1151, 1152, § 330 Criminal Code, 18 U. S. C. § 567.)

The fair spontaneous reading of this provision, in connection with § 275 of the Criminal Code—"Every person guilty of murder in the first degree shall suffer death." (35 Stat. 1143, 18 U. S. C. § 454)—would be that Congress has continued capital punishment as its policy; that one found guilty of murder in the first degree must suffer death if the jury reaches such a verdict but that "the jury may qualify their verdict by adding thereto 'without capital punishment;'" that, since federal jury action requires unanimity, when unanimity is not attained by the jury in order to "qualify their verdict" by "adding" the phrase of alleviation, the verdict of murder in the first degree already reached must stand. Certainly, if construction called for no more than reading the legislation of Congress as written by Congress, to interpret it as just indicated would not be blindly literal reading of legislation in defiance of the injunction that the letter killeth. On the contrary, it would heed the dominant policy of Congress that "every person guilty of murder in the first degree shall suffer death" unless the jury "qualify their verdict by adding thereto" the terms of remission.

But in a matter of this sort judges do not read what Congress wrote as though it were merely a literary composition. Such legislation is an agency of criminal justice and not a mere document. While the proper construction of the power of qualification entrusted to the jury by the Act of 1897 is before us for the first time upon full consideration, the issue was adjudicated more than seventeen years ago by one of the Circuit Courts of Appeals. It rejected the construction for which the Government now contends. *Smith* v. *United States,* 47 F. 2d 518. While a failure of the Government to seek a review of that decision by this Court has no legal significance, acquiescence by the Government in an important ruling in the administration of the criminal law, particularly one affecting the crime of murder, carries intrinsic importance where the construction in which the Government acquiesced is not one that obviously is repelled by the policy which presumably Congress commanded.

Moreover, we are dealing with a field much closer to the experience of the State courts, as the guardians of those deep interests of society which are reflected in legislation dealing with the punishment for murder and which are predominantly the concern of the States.[2]  If the

---

[2] There were only twenty-three convictions of first-degree murder in the federal district courts in continental United States, the territories, and the possessions, exclusive of the District of Columbia, during the six-year period beginning July 1, 1941, and ending June 30, 1947. Eight of the defendants convicted were sentenced to death, and fifteen were given life imprisonment. Of the eight sentenced to death, three were executed (see *Arwood* v. *United States,* 134 F. 2d 1007; *Ruhl* v. *United States,* 148 F. 2d 173; *United States* v. *Austin Nelson,* District Court for the Territory of Alaska, First Division, April 18, 1947 (unreported)); the sentence of one was commuted to life imprisonment (see *Paddy* v. *United States,* 143 F. 2d 847); and the sentences of four (including the petitioner here) have been stayed pending their appeals (see *United States* v. *Sam*

strongest current of opinion in State courts dealing with legislation substantially as ambiguous as that before us has resolved the ambiguity in the way in which the Circuit Court of Appeals for the Ninth Circuit resolved it in the *Smith* case, the momentum of such a current should properly carry us to the same conclusion. History and experience outweigh claims of virgin analysis of a statute which has such wide scope throughout the country and the incidence of which is far greater in the State courts than in the federal courts. This was the approach of the Court in *Winston* v. *United States,* 172 U. S. 303, where we held, after reviewing the State legislation and adjudication, that the statute did not limit the jury's discretion to cases where there were palliating or mitigating circumstances.

And so we turn to State law.

*A.* In only four States is death the inevitable penalty for murder in the first degree: Connecticut, Massachusetts, North Carolina, and Vermont. Such has been, until the other day, the law of England despite persistent and impressive efforts to modify it. See, *e. g.,* Minutes of Evidence and Report of the Select Committee on Capital Punishment (1930). It is worthy of note that this effort has just prevailed by the passage, on a free vote, of a provision abolishing the death penalty for an experimental period of five years. See 449 H. C. Deb. (Hansard) cls. 981 *et seq.* (April 14, 1948), and statement of the Home Secretary that death sentences will be suspended on the basis of this vote, even before the measure

---

*Richard Shockley* and *United States* v. *Miran Edgar Thompson,* District Court for the Northern District of California, Dec. 21, 1946 (unreported); *United States* v. *Carlos Romero Ochoa,* District Court for the Southern District of California, May 19, 1947 (unreported)).

I am indebted for these statistics to the Administrative Office of the United States Courts.

gets on the Statute Books. *Id.,* cls. 1307 *et seq.* (April 16, 1948).

*B.* In five States the death sentence has been abolished for murder in the first degree: Maine, Michigan, Minnesota, Rhode Island, and Wisconsin.

*C.* Most of the States—39 of them—leave scope for withholding the death sentence. The State enactments greatly vary as to the extent of this power of alleviation and in the manner of its exercise, as between court and jury.

I. In three States a jury's recommendation of life imprisonment is not binding on the trial court: Delaware, New Mexico, and Utah.

II. In fifteen States the jury's verdict must specify whether the sentence is to be death or life imprisonment: Arkansas, Colorado, Illinois, Indiana, Iowa, Kansas, Kentucky, Missouri, North Dakota, Oklahoma, Pennsylvania, South Dakota, Tennessee, Texas, and Virginia.

III. In eight other States the same result is reached, although the legislation is phrased that one found guilty of murder in the first degree suffers death or life imprisonment "at the discretion of the jury": Alabama, Arizona, California, Georgia, Idaho, Montana, Nebraska, and Nevada.

IV. In two States the punishment is life imprisonment unless the jury specifies the death penalty: New Hampshire and Washington.

V. Nine States have statutes more or less like the federal provision here under consideration: Louisiana, Maryland, New Jersey, New York, Ohio, Oregon, South Carolina, West Virginia, and Wyoming.

VI. Two States frankly recognize that differences of opinion are likely to occur when the jury has power to mitigate the death sentence and provide for life imprisonment even when the jury is not unanimous: Florida and Mississippi.

An examination of State law shows that all but four States have abandoned the death sentence as a necessary consequence of the finding of guilt of murder in the first degree; that most of the States which have retained the death sentence have entrusted the jury with remission of the death sentence, although sentencing is traditionally the court's function, and this is true even in those States where the legislature has not in so many words put this power in the jury's keeping; that even where the jury is not required to designate the punishment but merely has the power of recommending or "adding" to the verdict the lighter punishment, the most thoroughly canvassed judicial consideration of such power has concluded that the death sentence does not, as a matter of jury duty, automatically follow a finding by them of guilt of murder in the first degree, when the jury cannot unanimously agree that life imprisonment should be imposed.

Of the nine States that have enacted legislation more or less like the federal provision under consideration, the statutes of four—Louisiana, Maryland, West Virginia, and Wyoming—are virtually in the identical form. While the highest courts of these States have not passed upon the precise question before us, they have all construed their respective statutes as giving the jury a free choice as to which of the two alternative punishments are to be imposed, although it can fairly be said that such construction runs counter to the obvious reading that the sentence is death unless all of the jurors are agreed as to adding "without capital punishment." [3] Three of the nine

---

[3] The Supreme Court of Louisiana noted that "in capital cases, it is entirely left to the jury to determine the extent of the punishment in the event of conviction. The jurors, in such cases, are entirely free to choose between a qualified and an unqualified verdict, because the law gives them the unquestioned discretion to return either one or the other." *State* v. *Henry*, 196 La. 217, 233. The Court of Appeals of Maryland held that "In our opinion, it was the

States—Ohio, Oregon, and South Carolina—have statutes providing that the penalty is death unless the jury recommends "mercy" or "life imprisonment" in which case the punishment shall be life imprisonment. These have all been construed as providing for alternative punishment in the discretion of the jury.[4] While a similar New Jersey statute has been given the literal construction here

---

purpose of the act to empower juries to unite in a choice of punishments; that is, a choice between limiting punishment to life imprisonment and leaving the court unrestricted in fixing the punishment; and it was intended that all jurors should exercise a discretion in making that choice." *Price* v. *State,* 159 Md. 491, 494. The Supreme Court of West Virginia has held that under that State's statute the jury fixes the sentence and that, therefore, it was reversible error for the trial court to fail to "instruct the jury that it was its duty to find, in the event of a verdict of guilty of murder in the first degree, whether the accused should be hanged or sentenced to the penitentiary for life." *State* v. *Goins,* 120 W. Va. 605, 609. And the Supreme Court of Wyoming in a case where the defendant had entered a plea of guilty of murder in the first degree, held that "A defendant has the right to have a jury not only to try the issue of guilt or innocence, but also to decide what the punishment shall be. The right to a trial on the issue of guilt or innocence may be waived by a plea of guilty, which leaves only the question of punishment to be decided by the jury." *State* v. *Best,* 44 Wyo. 383, 389–90; see also *State* v. *Brown,* 60 Wyo. 379, 403 (where an instruction to the jury that "a person who is found guilty of murder in the first degree shall suffer death or be imprisoned in the penitentiary at hard labor for life, in the discretion of the jury trying the case" was upheld).

[4] While the judges of the Supreme Court of Ohio differed in their views as to whether the jury in making the recommendation were restricted to considerations based upon the evidence, they were in agreement that the statute gave the jury full and exclusive discretion as to whether or not to make the recommendation. *Howell* v. *State,* 102 Ohio St. 411. In Oregon and South Carolina it is sufficient to charge the jury that they may bring in either verdict. *State* v. *Hecker,* 109 Ore. 520, 559–60; *State* v. *McLaughlin,* 208 S. C. 462, 468.

espoused by the Government, the history of that State's legislation only serves to underscore the force of the decisions in the other States.[5] The ninth State, New York, in 1937, amended its legislation, which had made the death penalty mandatory upon all convictions for first-degree murder, by providing that in felony murder cases the jury "may, as a part of its verdict, recommend that the defendant be imprisoned for the term of his natural life. Upon such recommendation, the court may sentence the defendant to imprisonment for the term of his natural life." N. Y. Crim. Code and Pen. Law § 1045–a. In *People* v. *Hicks,* 287 N. Y. 165, the Court of Appeals found the following instruction erroneous:

> "There cannot be any recommendation unless the twelve of you agree. But if you have all agreed that the defendant is guilty, it is nevertheless your duty to report that verdict to the Court. Is that clear? Even though you cannot agree on the recommendation. In other words, you cannot use the

---

[5] Prior to 1916 the death penalty was mandatory in New Jersey. In that year the State legislature amended the law by the enactment of the jury recommendation form of statute. In 1919 the New Jersey Court of Errors and Appeals construed the statute to give the jury absolute discretion to bring in either verdict, and, by a close decision, held that the jury was not confined to the evidence in determining whether or not to make the recommendation. *State* v. *Martin,* 92 N. J. L. 436. That same year the legislature enacted into law the views of the dissenting judges requiring that the jury must make the recommendation "by its verdict, and as a part thereof, upon and after the consideration of all the evidence." N. J. Stat. Ann. § 2:138–4 (1939). In *State* v. *Molnar,* 133 N. J. L. 327, 335, the court construed the amended statute to mean that ". . . the penalty is death, determined not by the jury, but by the statute, and pronounced by the court. It is not correct to say that the jury imposes the sentence of death where it does not choose to make the recommendation for life imprisonment."

recommendation as bait, in determining the guilt or innocence of the defendant. . . . if you are all unanimous that there should be a recommendation, it is your duty to bring in the recommendation; but if you are not unanimous on that proposition it is nevertheless your duty to bring in the verdict of guilty of murder in the first degree, even though you cannot agree on the other. Is that plain?" (287 N. Y. at 167–68.)

The Court of Appeals held that the statute expressly empowered the jury to make a life-imprisonment recommendation a part of their verdict; that it did not expressly, or by implication, require the jury to render a verdict of guilty without the recommendation where they were not all agreed upon so doing; that, until the jury reached agreement on every part of their verdict, they had not agreed upon the verdict; that in such cases the legislature required the jury to determine

"*First,* whether the accused is guilty of the crime charged; *second,* whether the sentence shall be death or whether the trial judge may pronounce a sentence of life imprisonment. Both questions must be determined *by the jury,* and the jury's answer to both questions must be embodied in its verdict. A juror considering the question of whether an accused is guilty of the crime charged can no longer be influenced consciously or unconsciously by knowledge that the finding of guilt of the crime charged will entail a mandatory penalty which in his opinion is not justified by the degree of moral guilt of the accused. Each juror should now know that the finding of guilt does not carry that mandatory penalty unless the jury fails to make a recommendation of life imprisonment a part of the verdict and each juror should know that he is one of the twelve judges who shall decide what the verdict shall be in all its parts.

Until the twelve judges have agreed on every part of the verdict they have not agreed on any verdict." (*Id.* at 171.)

And so we reach the real question of this case. Should a federal jury report as their verdict that part of their deliberations which resulted in the finding of guilt of first degree murder if they cannot agree on the alleviating qualification, or should they be advised that their disagreement on the question of appropriate punishment may conscientiously be adhered to so that, if there be no likelihood of an agreement after making such an effort as is due from a conscientious jury, there would be no escape from reporting disagreement. After considerable doubt, as I have indicated, I find that the weight of considerations lies with giving the jury the wider power which the Court's construction affords.

"The decisions in the highest courts of the several States under similar statutes are not entirely harmonious, but the general current of opinion appears to be in accord with our conclusion." *Winston* v. *United States, supra,* at p. 313. The fair significance to be drawn from State legislation and the practical construction given to it is that it places into the jury's hands the determination whether the sentence is to be death or life imprisonment,[6] and, since that is the jury's responsibility, it is for them to decide whether death should or should not be the consequence of their finding that the accused is guilty of murder in the first degree. Since the determination of the sentence is thus, in effect, a part of their verdict, there must be accord by the entire jury in reaching the full content of the verdict.

---

[6] Indeed, we said in the *Winston* case that Congress by the Act of 1897 established the "simple and flexible rule of conferring upon the jury, in every case of murder, the right of deciding whether it shall be punished by death or by imprisonment." 172 U. S. at 312.

The Government contends that because of its "clear terms" little weight should be accorded the failure of Congress to repudiate the interpretation placed upon § 330 of the Criminal Code by the *Smith* case in 1931. That decision and acquiescence in it answer the claim that the section precludes a reading of it opposed to that which the Government offers. Moreover, it is significant that the proposed revision of the Criminal Code [7] leaves the form of this provision unchanged. This revision doubtless had the expert scrutiny of the Department of Justice,[8] and that Department must have had knowledge of the judicial gloss put upon the retained provision by the *Smith* case.[9]

[7] H. R. 3190, 80th Cong., 1st Sess., § 1111 (b), as passed by the House on May 12, 1947, 93 Cong. Rec. 5049.

[8] See *id.* at 5048; Hearings before Subcommittee No. 1 of the House Committee on the Judiciary on H. R. 1600 and H. R. 2055, 80th Cong., 1st Sess., pp. 33–35. It is interesting to note that the proposed revision itself contains most of the different forms by which legislatures have retained capital punishment as a penalty for the commission of certain crimes but have not made its imposition mandatory upon a finding of guilty. *E. g.,* § 2113 (e) (murder in commission of bank robbery—"not less than ten years, or punished by death if the verdict of the jury shall so direct"); § 1992 (wrecking train which results in death of any person—"death penalty or to imprisonment for life, if the jury shall in its discretion so direct"); § 1201 (a) (kidnapping—"(1) by death if the kidnaped person has not been liberated unharmed, and if the verdict of the jury shall so recommend, or (2) by imprisonment for any term of years or for life, if the death penalty is not imposed"); § 2031 (rape—"death, or imprisonment for any term of years or for life"). There is nothing in either the committee's report or the reviser's notes on these sections to indicate whether these are differences in form or in substance. See H. R. Rep. No. 304, 80th Cong., 1st Sess.

[9] The various Governmental agencies are apt to see decisions adverse to them from the point of view of their limited preoccupation and too often are eager to seek review from adverse decisions which should stop with the lower courts. The Solicitor General,

The care that trial judges should exercise in making clear to juries their power and responsibility in trials for murder is emphasized by the uncertainties regarding the construction appropriate to the jury's power to affect the punishment on a finding of guilt of murder in the first degree, now resolved by this decision. It fell upon the trial judge here to instruct the jury as to this power. Was his charge in accord with the statute as construed by us? The court below held that it was; the Government concedes that it was not. The charge and the instructions given were such as to permit reasonable minds to differ on this issue, and therein lies the error.[10] Charging a jury is not a matter of abracadabra. No part of the conduct of a criminal trial lays a heavier task upon the presiding judge. The charge is that part of the whole trial which probably exercises the weightiest influence upon jurors. It should guide their understanding after

however, must take a comprehensive view in determining when certiorari should be sought. He is therefore under special responsibility, as occupants of the Solicitor General's office have recognized, to resist importunities for review by the agencies, when for divers reasons unrelated to the merits of a decision, review ought not to be sought. The circumstances of the *Smith* case present a special situation, and the intention to carry the implication of "acquiescence" beyond such special circumstances is emphatically disavowed.

[10] The jury was instructed that "before you may return a qualified verdict of murder in the first degree without capital punishment that your decision to do so must be unanimous." By and of itself this instruction was consonant with either construction of the statute. If the jury had also been instructed either that "before you may return a verdict of murder in the first degree your decision not to add the qualification 'without capital punishment' must be unanimous" or that "if you are all agreed that the defendant is guilty but you are not all agreed to add 'without capital punishment' you must return a verdict of murder in the first degree without the qualification," they would have known which construction of the statute the trial judge adopted, and so would we.

jurors have been subjected to confusion and deflection from the relevant by the stiff partisanship of counsel.

To avoid reversal on appeal, trial judges err, as they should, on the side of caution. But caution often seeks shelter in meaningless abstractions devoid of guiding concreteness. Clarity certainly does not require a broad hint to a juror that he can hang the jury if he cannot have his way in regard to the power given to him by Congress in determining the sentence of one guilty of first-degree murder. On the other hand, conscientious jurors are not likely to derive clear guidance if told that "on both guilt and punishment [they] must be unanimous before any verdict can be found." They should be told in simple, colloquial English that they are under duty to come to an agreement if at all possible within conscience, for a verdict must be unanimous; that a verdict involves a determination not only of guilt but also of the punishment that is to follow upon a finding of guilt; that the verdict as to both guilt and punishment is single and indivisible; that if they cannot reach agreement regarding the sentence that should follow a finding of guilt, they cannot render a verdict; and this means that they must be unanimous in determining whether the sentence should be death, which would follow as a matter of course if they bring in a verdict that "the accused is found guilty of the crime of murder in the first degree," and they must be equally unanimous if they do not wish a finding of guilt to be followed by a death sentence, which they must express by a finding of guilt "without capital punishment."

MR. JUSTICE BURTON concurs in this opinion.

## APPENDIX.

*State legislation concerning the punishment for first degree murder.**

*A.* Death penalty mandatory:
> (1) Conn. Gen. Stat. § 6044 (1930).
> (2) Mass. Gen. Laws c. 265, § 2 (1932).
> (3) N. C. Code Ann. § 4200 (1939).
> (4) Vt. Pub. Laws § 8376 (1933).

*B.* Death penalty abolished:
> (5) Me. Rev. Stat. c. 117, § 1 (1944).
> (6) Mich. Stat. Ann. § 28.548 (1938).
> (7) Minn. Stat. § 619.07 (1945).
> (8) R. I. Gen. Laws c. 606, § 2 (1938) (penalty for murder in first degree is life imprisonment unless person is under life imprisonment sentence at time of conviction).
> (9) Wis. Stat. § 340.02 (1945).

*C.* Death penalty not mandatory:
> I. States where jury recommendation of life imprisonment is not binding on trial court:
>> (10) Del. Rev. Code § 5330 (1935).
>> (11) N. M. Stat. Ann. § 105–2226 (1929).
>> (12) Utah Rev. Stat. Ann. § 103–28–4 (1933).

---

*It is appropriate to give warning that the meaning attributed to some of the statutes by this classification does not have the benefit of guiding State adjudication. The ascertainment of the proper construction of a State statute when there is not a clear ruling by the highest court of that State is treacherous business. Nor can one be wholly confident that he has found the latest form of State legislation.

*C.* Death penalty not mandatory—Continued.

II. States where jury's verdict must specify whether the sentence is to be death or life imprisonment:

(13) Ark. Dig. Stat. § 4042 (1937) (as interpreted by the courts).

(14) Colo. Stat. Ann. c. 48, § 32 (1935).

(15) Ill. Ann. Stat. c. 38, § 360 (1935).

(16) Ind. Ann. Stat. §§ 10–3401 and 9–1819 (Burns 1942).

(17) Iowa Code § 12911 (1939).

(18) Kan. Gen. Stat. Ann. § 21–403 (1935).

(19) Ky. Rev. Stat. Ann. §§ 435.010 and 431.130.

(20) Mo. Rev. Stat. Ann. § 4378 (1939) (as interpreted by the courts).

(21) N. D. Comp. Laws Ann. § 9477 (1913).

(22) Okla. Stat. Ann. tit. 21, § 707 (1937).

(23) Pa. Stat. Ann. tit. 18, § 4701 (1945).

(24) S. D. Sess. Laws 1939, c. 30, amending S. D. Code § 13.2012 (1939) (but even if jury specifies death sentence, court "may nevertheless pronounce judgment of life imprisonment").

(25) Tenn. Code Ann. § 10772 (Williams 1934).

(26) Tex. Pen. Code Ann. art. 1257 (1936). ("The punishment for murder shall be death or confinement in the penitentiary for life or for any term of years not less than two."—Courts have interpreted statute as requiring jury to specify penalty.)

(27) Va. Code Ann. § 4394 (1936) (as interpreted by the courts).

*C.* Death penalty not mandatory—Continued.

 III. States where sentence of death *or* life imprisonment is at the discretion of the jury:

(28) Ala. Code Ann. tit. 14, § 318 (1940).

(29) Ariz. Code Ann. § 43–2903 (1939).

(30) Cal. Pen. Code § 190 (1941).

(31) Ga. Code Ann. § 26–1005 (1936).

(32) Idaho Code Ann. § 17–1104 (1932).

(33) Mont. Rev. Code Ann. § 10957 (1935).

(34) Neb. Rev. Stat. § 28–401 (1943).

(35) Nev. Comp. Laws Ann. § 10068 (1929).

 IV. States where the punishment is life imprisonment unless the jury specifies the death penalty:

(36) N. H. Rev. Laws c. 455, § 4 (1942).

(37) Wash. Rev. Stat. Ann. § 2392 (1932).

 V. States that have statutes more or less like the federal provision under consideration:

(38) La. Code Crim. Law & Proc. Ann. art. 409 (1943).

(39) Md. Ann. Code Gen. Laws art. 27, § 481 (1939).

(40) N. J. Stat. Ann. § 2:138–4 (1939).

(41) N. Y. Crim. Code and Pen. Law § 1045–a.

(42) Ohio Gen. Code Ann. § 12400 (1939).

(43) Ore. Comp. Laws Ann. § 23–411 (1940).

(44) S. C. Code Ann. § 1102 (1942).

(45) W. Va. Code Ann. § 6204 (1943).

(46) Wyo. Comp. Stat. Ann. § 9–201 (1945).

*C.* Death penalty not mandatory—Continued.

    VI. States that give effect to jury recommendation for life imprisonment even when jury is not unanimous in making that recommendation:

        (47) Fla. Stat. Ann. § 919.23 (1944). ("Whoever is convicted of a capital offense and recommended to the mercy of the court by a majority of the jury in their verdict, shall be sentenced to imprisonment for life.")

        (48) Miss. Code Ann. § 2217 (1942). ("Every person who shall be convicted of murder shall suffer death, unless the jury rendering the verdict shall fix the punishment at imprisonment in the penitentiary for the life of the convict; or unless the jury shall certify its disagreement as to the punishment . . . in which case the court shall fix the punishment at imprisonment for life.")