**UNITED STATES COURT OF APPEALS**
**for the Fifth Circuit**

_____

No. 92-7655
Summary Calendar
_____

FREDDIE LEE WEBB,

Appellant,

VERSUS

JAMES A. COLLINS, Director,
Texas Department of Criminal Justice,
Institutional Division,

Appellee.

_____

Appeal from the United States District Court
for the Southern District of Texas
_____
(August 31, 1993)

Before JOLLY, DUHÉ, and BARKSDALE, Circuit Judges.

PER CURIAM:

Freddie Lee Webb, a Texas prisoner under a sentence of death, appeals from the district court's denial of his petition for a writ of habeas corpus. The district court granted a certificate of probable cause and left its previously granted stay of execution in effect pending appeal. Of the several issues argued to the district court, Webb only raises one for our review: whether the jury instructions given pursuant to article 37.071(2) of the Texas Code of Criminal Procedure violated his rights under the Eighth and Fourteenth Amendments. For the reasons stated below, we affirm the district court's decision.

BACKGROUND

On December 8, 1985, Webb and an accomplice seized Leo Cantu and his wife, Elizabeth, after she closed the Shrimp Ahoy Restaurant in Corpus Christi, Texas, where she was the night manager. Webb and his accomplice returned the Cantus to the restaurant for purposes of opening the safe and stealing its contents. Once at the restaurant, Webb instructed his accomplice to remain with Leo Cantu in the car while he took Elizabeth Cantu into the restaurant, forced her to open the safe, bound her, and took the money. Webb and his accomplice then fled in the Cantus' car with Leo Cantu as a prisoner. Although Elizabeth Cantu freed herself and alerted the authorities, her husband was murdered in a remote area of Corpus Christi. Several months later, Webb was arrested with the murder weapon while fleeing the authorities from the scene of another armed robbery.

In October 1986, a jury found Webb guilty for the capital offense of murder of Leo Cantu in the course of committing and attempting to commit kidnapping. In a separate proceeding, the jury answered affirmatively the special questions submitted to it pursuant to article 37.071(2) of the Texas Code of Criminal Procedure, and Webb was sentenced to death. The Court of Criminal Appeals affirmed the conviction and sentence. Webb v. State, 760 S.W.2d 263 (Tex. Crim. App. 1988) (en banc), cert. denied, 491 U.S. 910 (1989). The Supreme Court denied Webb's petition for certiorari on June 19, 1989, rendering his conviction final. Webb v. Texas, 491 U.S. 910 (1989).

Webb next filed an application for a writ of habeas corpus in

2

the state trial court.  The trial court entered findings of fact and conclusions of law, but made no recommendation for disposition of the case.  The Court of Criminal Appeals found that the trial court's findings and conclusions were supported by the record and denied the relief.

Webb then filed a second application for a state writ of habeas corpus, alleging that the jury in his case had been unable to consider various types of mitigating evidence in determining his punishment.  The Court of Criminal Appeals, noting that none of the evidence had been introduced at trial, denied relief.  Finally, Webb initiated the present habeas proceedings in federal district court.

                              DISCUSSION

Webb argues that his rights under the Eighth and Fourteenth Amendments were violated by a statutory prohibition against informing jurors of the effect of the failure to agree on a punishment phase issue.  The Texas sentencing statute provides that if the jury unanimously answers "yes" to each of the punishment questions submitted, the defendant will be sentenced to death, but if ten or more jurors answer one or more of the issues "no," or if the jury is unable to agree on an answer to any issue, the defendant will be sentenced to life imprisonment.  Texas Crim. Proc. Code Ann. art. 37.071(2) (West Supp. 1993).  The statute, however, prohibits the court or the attorneys for the state or the defendant from informing the jury of the effect of the failure to agree on an issue.  Id.  Webb argues that without knowledge of the

3

effect of the failure to agree on an issue, a juror might be misled into believing that he or she could not vote "no" without a consensus of ten jurors and would feel compelled to vote "yes."

Webb's claim is based on the principles announced in Andres v. United States, 333 U.S. 740 (1948) and Mills v. Maryland, 486 U.S. 367 (1988). Webb asks us, however, to create a "new rule" within the meaning of Teague v. Lane, 489 U.S. 288 (1989). See Nethery v. Collins, 993 F.2d 1154, 1162 (5th Cir. 1993). Under Teague, new rules of constitutional criminal procedure will not be announced on federal habeas review unless an exception applies. Teague, 489 U.S. at 316. "[A] case announces a new rule when it breaks new ground or imposes a new obligation on the States or the Federal Government. . . . To put it differently, a case announces a new rule if the result was not dictated by precedent existing at the time the defendant's conviction became final." Id. at 301; Penry v. Lynaugh, 492 U.S. 302, 314 (1989) (quoting Teague). Although Mills and Andres were decided prior to Webb's final conviction, Webb's reliance on the principles announced in those cases is not the same as saying his claim is dictated by precedent. See Wiley v. Puckett, 969 F.2d 86, 96 (5th Cir. 1992).

Andres involved two federal statutes: one statute requiring that a person found guilty of murder in the first degree be put to death and another statute allowing the jury to qualify their verdict with the words "without capital punishment," thereby sentencing the defendant to life imprisonment. Andres, 333 U.S. at 746 & n.7. The Court first concluded that the statutes

4

interpreted together required that the jury's decision be unanimous as to both guilt and whether the punishment of death should be imposed. Id. at 749. The district court instructed the jury, however, that its decision to return a qualified verdict of murder must be unanimous. Id. at 751. The Court held that the jury instruction did not convey the correct interpretation of the statutes. The Court explained that a reasonable juror might conclude that if they all could not agree, the verdict of guilt must stand unqualified. Id. at 752.

In Mills, the jury instructions under a Maryland statute required the jury to answer "yes" to questions regarding mitigating circumstances only if unanimous and otherwise to answer "no." Mills, 486 U.S. at 378. If all the answers were marked "no," a death sentence was imposed. Id. at 389. Nothing in the instructions suggested that the jury could leave an answer blank and proceed to the next stage of deliberation. Id. at 378. If the jury did determine that there was at least one mitigating circumstance, another section of the verdict form allowed the jurors to consider only the mitigating circumstances marked "yes." Id. at 380. The Court held that the jurors may have been led to believe that they were precluded from considering mitigating evidence without unanimity, even though precedent required that a sentencer be permitted to consider all mitigating evidence. Id. at 384.

The Supreme Court's decisions in Andres and Mills may inform the analysis of his claim but they do not dictate the

5

constitutional rule urged by Webb.  Both <u>Andres</u> and <u>Mills</u> involve statutory schemes different from the Texas sentencing statute and different legal standards.  Thus, because Webb does not suggest that his claim comes within an exception, <u>Teague</u> forecloses our consideration of Webb's claim, and we therefore affirm the district court's decision and lift the stay of execution granted by the district court.

AFFIRMED, STAY LIFTED.