Tony Lee WALKER, Petitioner

v.

Wayne SCOTT, Director, Texas Department of Criminal Justice, Institutional Division, Respondent

No. 1:99CV148.

United States District Court,
E.D. Texas,
Beaumont Division.

Dec. 8, 2000.

F.R. "Buck" Files, Jr. of Bain, Files, Jarrett and Bain, PC, Tyler, TX, for Plaintiffs.

Christina Thompson, Assistant Attorney General, Austin, TX, for Defendant.

## MEMORANDUM OPINION

SCHELL, Chief Judge.

Petitioner Tony Lee Walker ("Walker"), an inmate confined to the Texas Department of Criminal Justice, Institutional Division, filed a petition for writ of *habeas corpus* pursuant to 28 U.S.C. § 2254. Walker challenges his capital murder conviction and death sentence imposed on November 15th and 18th, 1993, in the 276th Judicial District Court of Morris County, in cause number 6885, styled *The State of Texas v. Tony Lee Walker.*

This case is governed by the Antiterrorism and Effective Death Penalty Act ("AEDPA") because Walker's petition for federal *habeas* relief was filed on March 22, 1999, after the AEDPA effective date of April 24, 1996.

The following facts are taken from Walker's petition. Bo and Virginia Simmons, an elderly couple, were found dead in their home in Daingerfield, Texas on May 23, 1992. Both individuals had been beaten to death. Walker and two other men, Curtis Traylor and Patrick Franklin, were seen in the vicinity of the Simmons' home the evening of the murder. A search of the area produced clothing covered with blood, which matched the description of Walker's clothing the night of the murder. Walker agreed to accompany law enforcement officers to the courthouse for questioning. After signing a consent form, Walker was transported to a hospital where authorities obtained hair and blood samples. Walker returned to the courthouse for further questioning, but denied any involvement in the murders. A law enforcement officer told Walker that if the blood on his clothes matched the blood of the murder victims, the police would be able to prove Walker had committed the crimes. Walker then confessed to the murders and to sexually assaulting Virginia Simmons. DNA testing revealed that the blood on Walker's clothes was consistent with Virginia Simmons' blood. At trial, Walker denied that he killed the victims, but testified that he sexually assaulted Virginia Simmons, hit Bo Simmons with a stick until the stick broke and then began hitting him with a walking cane, and watched the co-defendants beat the victims.

Walker was found guilty of capital murder on November 15, 1993, and sentenced to death November 18, 1993, in the 276th Judicial District Court of Morris County, No. 6885. The Texas Court of Criminal Appeals affirmed Walker's conviction and sentence in an unpublished opinion issued October 30, 1996. *Walker v. State,* slip op. No. 71,807 (Tex.Crim.App. Oct. 30, 1996). Walker's request for a rehearing was denied on December 18, 1996. On October 6, 1997, the United States Supreme Court denied Walker's petition for writ of *certiorari.* On August 4, 1997, Walker filed an

application of writ of *habeas corpus* in state court. No evidentiary hearing was held, but on August 10, 1998, the state district court entered findings of fact and conclusions of law recommending that relief be denied. On September 30, 1998, the Texas Court of Criminal Appeals adopted most, but not all, of the trial court's findings and conclusions and denied Walker's state writ of *habeas corpus. Ex parte Walker* No. 38,633-01. On March 22, 1999, Walker filed this petition for writ of *habeas corpus,* raising eight claims for relief. Respondent filed his answer and a Motion for Summary Judgment on September 2, 1999.

## CLAIMS FOR RELIEF

■ In his first claim, Walker states that he was denied effective assistance of counsel in five instances during his trial. In his first allegation of ineffective assistance of counsel, Walker complains that trial counsel failed to provide the defense expert, Dr. John Hickman, a copy of Walker's confession prior to Dr. Hickman testifying at the punishment phase. This claim was raised in Walker's state post-conviction writ of *habeas corpus* and rejected by the Texas Court of Criminal Appeals. An application for writ of *habeas corpus* cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's decision was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court. 28 U.S.C. § 2254(d)(1).

The Texas Court of Criminal Appeals concluded that Walker failed to show that his trial counsel were ineffective in only orally informing Dr. Hickman of the contents of his confession. The court found counsel acted reasonably in informing Dr. Hickman of the confession and relying upon Dr. Hickman's ability to request the

information he needed for an appropriate evaluation. Finally, the court determined that "a hard copy of [Walker's] confession was not a necessary prerequisite for an adequate evaluation as [Walker's] attorneys did inform Dr. Hickman in 'explicit detail' of the contents of [Walker's] confession." The issue for this Court is whether the state court's decision was an unreasonable application of federal law as determined by the United States Supreme Court. *See* 28 U.S.C. § 2254(d)(1).

In order to establish a claim of ineffective assistance of counsel, a petitioner must demonstrate both that counsel's performance was deficient and that, had counsel performed competently, there would be a reasonable probability that the result in the case would have been different. *Strickland v. Washington,* 466 U.S. 668, 687, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). "Deficient performance" is demonstrated by a showing that, in light of all the circumstances, counsel's performance fell below an objective standard of reasonableness. *Id.* at 687-88, 104 S.Ct. 2052. In determining whether counsel's performance was deficient, the Court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689, 104 S.Ct. 2052. To prove prejudice, the second prong under *Strickland,* a petitioner must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694, 104 S.Ct. 2052. A "reasonable probability" is a probability sufficient to undermine confidence in the outcome of the proceeding. *Id.*

■ The evidence in the record reveals that Dr. Hickman was aware that Walker had confessed to the crime and also knew the contents and substance of Walker's confession.[1] G.F. Stovall, one of Walker's

---

1. In his affidavit, Dr. Hickman stated that he did not know, prior to taking the witness stand, that Walker had given a confession. The record does not support Dr. Hickman's

statement. During trial, when the prosecutor asked Dr. Hickman if he knew that a confession was given, Dr. Hickman replied that he did. SF vol. 47, p. 192. The state court's

trial attorneys, testified in his affidavit that he

> recall[ed] discussing in explicit detail the contents and substance of the confession with Dr. Hickman, with whom I had telephone conferences on May 25th, June 4th, June 7th, June 11th, June 13th, July 13th, and July 15th. In addition, I personally met with Dr. Hickman on July 10th, prior to his interview with [Walker], and on November 16th, prior to his testifying at the punishment hearing. We discussed his prior work in many capital cases. I deferred to his professional judgment regarding his psychiatric testing and analysis in preparation for his trial testimony. If Dr. Hickman did not review a written copy of the confession before testing or testifying, it is because he did not request to do so, even though he had full knowledge of the details of the statement.

Charles M. Cobb, Walker's other trial attorney, stated in his affidavit that

> [w]hether Dr. Hickman had read [Walker's] written confession prior to testifying or not, he had been given a detailed description of the contents of the confession. Dr. Hickman had an opportunity to examine [Walker] and would have been provided with anything that he requested if it was available. In the presentation of his testimony at trial, Dr. Hickman indicated that the written confession further verified his findings in favor of [Walker].

Even if Dr. Hickman did not have a copy of Walker's written confession, he knew what the confession contained and had that information prior to his testing of Walker, and prior to his testimony at the punishment phase. This Court must strongly presume that trial counsel rendered adequate assistance and that the challenged conduct was the product of reasoned trial strategy. *Strickland,* 466 U.S. at 690, 104 S.Ct. 2052. Walker's assertions do not rebut this presumption. The determination of what happened in the proceedings is given deference as long as it is

Court finds that counsel's performance was not deficient within the meaning of *Strickland,* but rather, was a tactical decision which this Court will not second guess. *See Mattheson v. King,* 751 F.2d 1432, 1441 (5th Cir.1985). Accordingly, the state court's decision was not an unreasonable application of *Strickland. See* 28 U.S.C. § 2254(d)(1).

■ Next, Walker complains that his trial counsel "joined with the State" in the direct examination of Dr. Arthur Eisenberg, the State's witness on DNA. Dr. Eisenberg prepared a slide presentation for the jury to help explain the process of genetic fingerprinting and matching, which he presented during the State's direct examination. While Dr. Eisenberg was explaining the genetic process, defense counsel was permitted to interject and ask questions of the State's witness. Defense counsel took Dr. Eisenberg on cross-examination at the completion of the State's direct examination. Walker argues that the manner in which Dr. Eisenberg was questioned amounted to a "co-direct" examination in violation of Walker's right to confront the witnesses against him.

Walker raised this complaint in his state post-conviction writ of *habeas corpus.* The Texas Court of Criminal Appeals found that Dr. Eisenberg and his conclusions were subjected to meaningful adversarial testing. The court concluded that counsel was not ineffective and that

> [a]llowing Dr. Eisenberg to make a general presentation with an accompanying slide show while both the prosecutor and defense counsel asked questions did not deprive [Walker] of meaningful adversarial testing. An initial joint question and answer session, followed by a more specific cross-examination, reflected a reasoned, strategic, and effective presentation of the evidence by defense counsel.

supported by the record. *See Moore v. Johnson,* 194 F.3d 586, 604 (5th Cir.1999).

In response to Walker's claim, Mr. Stovall stated in his affidavit that

> Mr. Cobb interrupted Dr. Eisenberg's direct testimony on a few occasions with cross-examination questions, which were part of legitimate trial strategy to test and limit the applicability and trustworthiness of DNA evidence, . . . .

Mr. Cobb characterized his questions that he interjected as "in the nature of *voir dire* of the witness or cross-examination and were part of the defense strategy of attempting to limit the damaging effect of the DNA testimony . . . ." Defense counsel was not bolstering Dr. Eisenberg's testimony, but was raising questions as to the accuracy and reliability of genetic testing. Walker's argument fails to rebut the presumption that trial counsel rendered adequate assistance and that the challenged conduct was the product of reasoned trial strategy. *See Strickland,* 466 U.S. at 690, 104 S.Ct. 2052. Moreover, because Walker admitted that he sexually assaulted Virginia Simmons, there is not a reasonable probability that the outcome of the case would have been different had defense counsel questioned Dr. Eisenberg in an alternate manner. *Id.* at 694, 104 S.Ct. 2052. The court's decision was not an unreasonable application of federal law as determined by the United States Supreme Court in *Strickland.* *See* 28 U.S.C. § 2254(d)(1).

In his third ineffective assistance sub-claim, Walker alleges that his attorney joined with the State in making an incorrect argument concerning the law of "reasonable doubt." Mr. Stovall argued the following to the jury:

> The Charge of the court tells you that if after you consider that question as a jury, you have a reasonable doubt as a group, you have a reasonable doubt about whether he did that acting alone, then you acquit him of that and you move on to the next question. You acquit him of that and move on to the next question. It's not if a few of you think you have a reasonable doubt about that.
>
> If as a group you have a reasonable doubt and you can't convict on that grounds [sic], you move down to the next question.

Walker claims that this argument, as well as defense counsel's failure to object to a similar argument made by the State, lead the jury to believe that a majority of them would have to agree that there was a reasonable doubt as to Walker's guilt before they could consider the lesser included offense of murder.

Walker first raised this claim in his state post-conviction writ of *habeas corpus.* The Texas Court of Criminal Appeals found that

> the trial court properly instructed the jury on the issue of reasonable doubt and the need for a unanimous verdict. During *voir dire,* potential jurors were educated about the necessity of a unanimous verdict. Jurors were also informed by Mr. Stovall about their independent roles in the process. And the importance of individual decision making was emphasized by both parties during jury argument.

(Internal citations omitted). The court concluded that there was no prejudice because Mr. Stovall's argument

> was surrounded by clear trial court instructions, informative *voir dire* discussions, and other, accurate jury arguments from both sides. With all these correct instructions available to the jury, four sentences, referring the jury back to the trial court's charge, could not have mislead the jury or altered the result of [Walker's] trial.

The court's decision is not an unreasonable application of federal law. While Mr. Stovall's argument may have been incorrect, the trial court's proper instruction on reasonable doubt, as well as the comments by both the State and defense on the need for a unanimous verdict and individual decision making dispensed with any possible prejudice. Walker has failed to demonstrate that there is a reasonable probabili-

ty that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Accordingly, the state court's decision was not contrary to, or an unreasonable application of, federal law as determined by the United States Supreme Court in *Strickland.* *See* 28 U.S.C. § 2254(d)(1).

■ In his next ineffective assistance of counsel sub-claim, Walker contends that defense counsel failed to object to five improper arguments made by the State which struck at Walker "over the shoulders" of his counsel. This claim was raised in Walker's state post-conviction writ of *habeas corpus.* The Texas Court of Criminal Appeals found that

[Walker] presented evidence at trial suggesting that a neighbor of the Simmons, Willie Chisum, might have been involved in the murders. [Walker] presented evidence at trial suggesting that the DNA and fingerprint testing conducted in this case was flawed, compromised or incomplete.

The court then concluded that Walker failed to show his counsels' conduct fell "outside the range of professional competent assistance." *See Strickland,* 466 U.S. at 686, 104 S.Ct. 2052. Specifically, the court stated that

[t]he prosecutor's arguments concerning Willie Chisum, DNA evidence, fingerprint evidence and other aspects of the investigation conducted in this case were proper; they were invited by defense counsels' earlier attempts, *via* the cross-examination of the State's witnesses, to characterize the investigation as faulty, cursory, and incomplete. In that regard, the prosecutor's arguments did not warrant an objection from [Walker's] counsel as they were invited by the defensive theories put in front of the jury and thus, constituted reasonable summaries of, or deductions from, the evidence. No unprofessional error, therefore, has been shown.

Moreover, even if the arguments were in error, [Walker's] trial counsel cannot be said to be ineffective in choosing not to object to them. Any inconsistencies in the defensive evidence pointed out by the prosecutor did not need to be further emphasized by objection. Trial counsel [sic] decision not to object, therefore, reflected sound trial strategy.

In response to this claim, Mr. Stovall testified in his affidavit that

objections to testimony and argument can sometimes do more harm than good by, among other reasons, drawing additional unwanted attention to the testimony or argument. For this reason, counsel sometimes did not object to matters which were even fairly clearly objectionable. The argument referred to in this claim was arguably objectionable, but did not need to be reinforced. It came during the State's rebuttal closing, after days and days of testimony and hours of closing argument. Affiant's professional judgment at the time indicated that no objection need be made. We felt we had good rapport with the jury and that we had earned their respect and trust in our efforts *vis-a-vis* the prosecution.

Mr. Cobb stated

I have always felt that objections during final arguments must be carefully considered before made, even though the decision must be made instantaneously. A proper objection might have the very unfavorable or fatal effect of emphasizing the most harmful aspects of the evidence or the effect of opening the door for even more damaging argument. Counsel for [Walker] were especially attentive to the State's argument and felt that no objection should be made, because making the objection would be more harmful than the objectionable statement made by the State. In the case of the statements of the State to which [Walker] now complains, I believed an objection at trial would not have prevented the State from conveying the desired message to the jury by other language and with the added emphasis of the objection.

Defense counsel was well aware of the argument propounded by the State. However, in light of their defensive strategy with regard to the evidence introduced at trial, as well as their desire not to draw attention to unfavorable evidence, they chose not to object to the prosecutor's argument. This was a tactical decision which did not fall "outside the range of professional competent assistance." *See Strickland,* 466 U.S. at 686, 104 S.Ct. 2052. Accordingly, the state court's decision that counsels' conduct was not deficient was not contrary to, or an unreasonable application of federal law, as determined by the United States Supreme Court in *Strickland. See* 28 U.S.C. § 2254(d)(1).

■ In his final ineffective assistance claim, Walker asserts that his counsel failed to object to allegedly improper cross-examination of him during the punishment phase. Specifically, Walker complains that the prosecutor's questioning left the jury with the impression that Walker received a light sentence in a prior murder conviction as a result of his cooperation with police rather than for his lack of involvement in the crime. This claim was raised in Walker's state post-conviction writ of *habeas corpus.* The Texas Court of Criminal Appeals found that

> [Walker] testified that his prior five year sentence for a different murder was the result of an "offer" he accepted from the State. [Walker] informed the jury of his level of participation in the prior offense and compared it to that of Curtis Traylor.

The court further concluded that Walker failed to prove his counsels' decision not to object was error:

> Through his own testimony, [Walker] raised the issues of both a plea bargain agreement for the prior offense and his level of involvement in the offense. The prosecutor was allowed to explore during cross examination these matters raised on direct examination. Accordingly, no objection from [Walker's] coun-

sel was warranted and thus, no ineffectiveness has been shown.

(Internal citations omitted). In response to Walker's claim, Mr. Stovall noted in his affidavit that

> [t]estimony had already been elicited explaining the circumstances of the prior offense, [Walker's] relatively minor role in the offense, and his subsequent lighter sentence in comparison with his co-defendants. We felt the jury fully grasped the reason for the lighter sentence and that [the prosecutor's] unsuccessful attempts to imply anything different merely tended to damage the jury's trust in the State's attorneys.

Defense counsel's decision not to object to the cross-examination was not outside the range of professionally competent assistance. *See Strickland,* 466 U.S. at 689, 104 S.Ct. 2052. Walker explained to the jury his role in the prior murder. Defense counsel chose not to object to the prosecutor's suggestion that Walker's light sentence was a product of his cooperation with police in light of Walker's testimony, and in an effort to down-play the prior offense. Walker has not overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy." *See id.* The state court's decision was not an unreasonable application of federal law. *See* 28 U.S.C. § 2254(d)(1).

Based on the foregoing, Walker's first claim for relief will be denied.

■ In his second claim, Walker contends that his Eighth and Fourteenth Amendment rights were violated because the trial court refused to instruct the jury that Walker would not be eligible for parole for thirty-five years. This claim was raised and rejected on direct appeal. The question for this Court, then, is whether the state court's decision was contrary to, or an unreasonable application of federal law, as determined by the Supreme Court. *See* 28 U.S.C. § 2254(d)(1).

In *Simmons v. South Carolina*, 512 U.S. 154, 169, 114 S.Ct. 2187, 129 L.Ed.2d 133 (1994), the Supreme Court held that due process requires a trial court to instruct the jury in a prosecution for capital murder that the defendant would be statutorily ineligible for release on parole if the jury imposed a life sentence. Justice O'Connor, in a concurring opinion, opined that the case should be limited to its facts by concluding that there would be no constitutional requirement to inform the jury if a defendant were eligible for parole at some point in time. *Id.* at 176, 114 S.Ct. 2187. The Fifth Circuit, in *Allridge v. Scott*, 41 F.3d 213, 222 (5th Cir.1994), *cert. denied*, 514 U.S. 1108, 115 S.Ct. 1959, 131 L.Ed.2d 851 (1995), interpreted *Simmons* to mean that "due process requires the state to inform a sentencing jury about a defendant's parole ineligibility when, and only when, (1) the state argues that a defendant represents a future danger to society, and (2) the defendant is legally ineligible for parole." [2] *See also Montoya v. Scott*, 65 F.3d 405, 416 (5th Cir.1995) (rejecting petitioner's claim that he was unconstitutionally prevented from giving mitigating effect to the fact that if he was sentenced to life in prison, he would have been required to serve twenty years before becoming eligible for parole). In the instant case, Walker would have been eligible for release on parole had he received a life sentence. Accordingly, the trial court's refusal to give a parole eligibility instruction did not violate Walker's constitutional rights, and the state court's decision so finding is not contrary to, or an unreasonable application of, federal law as determined by the United States Supreme Court in *Simmons*. *See* 28 U.S.C. § 2254(d)(1). Walker's second claim will be denied.

■ In his third claim, Walker contends that the Texas capital murder sentencing statute's failure to inform the jury that a single holdout juror on any special issue would result in an automatic life sentence violates the Eighth and Fourteenth Amendments. Walker argues that the trial court's failure to inform the jury about the effect of a single holdout juror, in light of the "12–10" rule, may have lead a reasonable juror in his case to believe that he or she had no ability to give mitigating effect to any and all types of mitigating circumstances unless at least nine other jurors did so as well.[3]

■ Walker's claim is based on the principles announced in *Mills v. Maryland*, 486 U.S. 367, 108 S.Ct. 1860, 100 L.Ed.2d 384 (1988).[4] The Fifth Circuit has considered this argument before and found it barred by the non-retroactivity rule of *Teague v. Lane*, 489 U.S. 288, 316, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989). *See Webb v. Collins*, 2 F.3d 93, 96 (5th Cir. 1993). Under *Teague*, new rules of constitutional criminal procedure will not be announced on federal *habeas corpus* review unless an exception applies. *Teague*, 489 U.S. at 316, 109 S.Ct. 1060. Because the petitioner's claim in *Webb* is indistinguishable from Walker's claim, the Court finds Walker's claim *Teague*-barred as well, and will deny Walker's third claim.[5]

2. The *Allridge* court also noted that any extension of *Simmons* would be barred under *Teague v. Lane*, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989). *Allridge*, 41 F.3d at 222 n. 11.

3. Tex.Code Crim.Pro. art. 37.071 provides that "[t]he court shall charge the jury that ... it may not answer any issue submitted under Subsection (b) of this article "yes" unless it agrees unanimously and it may not answer any issue "no" unless 10 or more jurors agree; ...."

4. In *Mills*, the Supreme Court struck down a death sentence imposed under Maryland's capital punishment scheme because the court's jury instruction might have prohibited the jury from considering mitigating evidence unless the jurors unanimously agreed on each mitigating factor.

5. Furthermore, as the Fifth Circuit recognized in *Jacobs v. Scott*, 31 F.3d 1319, 1328 (1994), the law in Texas is completely different from the law at issue in *Mills*.

In his fourth claim, Walker argues that his death sentence violates the Eighth Amendment because there has been no finding that his *mens rea* satisfied the constitutional minimum for "death-eligibility" under *Enmund v. Florida*, 458 U.S. 782, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982) and *Tison v. Arizona*, 481 U.S. 137, 107 S.Ct. 1676, 95 L.Ed.2d 127 (1987). The jury in this case was given an instruction that essentially tracked Tex.Code Crim. Pro. art. 37.071, § 2(b)(2), that if it unanimously answered the future dangerousness special issue in the affirmative, it should then determine

> whether the defendant actually caused the death of the deceased or did not actually cause the death of the deceased but intended to kill the deceased or another or anticipated that a human life would be taken.

Walker claims that *Enmund* and *Tison* prohibit the imposition of the death penalty predicated on no more than a finding that Walker "anticipated that a human life would be taken." This claim was raised and rejected on direct appeal. Accordingly, this Court must determine whether the state court's decision was contrary to, or an unreasonable application of, clearly established federal law, as determined by the Supreme Court. *See* 28 U.S.C. § 2254(d)(1).

*Enmund* held that the death penalty may not be imposed on one who "aids and abets a felony in the course of which a murder is committed by others but who does not himself kill, attempt to kill, or intend that a killing take place or that lethal force will be employed." 458 U.S. at 797, 102 S.Ct. 3368. *Tison* subsequently limited *Enmund* by holding that "major participation in the felony committed, combined with reckless indifference to human life, is sufficient to satisfy the *Enmund* culpability requirement." 481 U.S. at 158, 107 S.Ct. 1676. The Texas Court of Criminal Appeals found that there was no doubt Walker's participation in the underlying felony, sexual assault, was major, citing

Walker's testimony at trial admitting that he sexually assaulted Virginia Simmons while the co-defendants restrained her.

The court then analyzed whether "anticipation that a life would be taken" found in Tex.Code Crim.Pro. art. 37.071 is an equivalent *mens rea* to "reckless indifference to human life" discussed in *Tison*. Anticipation that a life would be taken, the court found, suggests to a rational juror, at the very least, a "probability, something more than a mere possibility." The court reasoned that

> [a]wareness of the likelihood of a murder's occurrence is in fact what brings the Article 37.071, § 2(b)(2) *mens rea* within the ambit of those for which the death penalty is not disproportionate under the Eighth Amendment. If the jury answered the Article 37.071, § 2(b)(2) special issue affirmatively because it found that [Walker] anticipated a killing would occur, it necessarily found that he was aware of a probability—and not just the theoretical possibility attendant to any violent felony—of a killing. In short, the jury was required to find that [Walker] acted with reckless indifference to human life because he consciously disregarded a known risk of death that would accompany the sexual assault.

This reasoning, coupled with Walker's major participation in the sexual assault, satisfies the *mens rea* for death eligibility under *Enmond* and *Tison*. The Texas Court of Criminal Appeals' decision is not contrary to, or an unreasonable application of, federal law as determined by the Supreme Court. *See* 28 U.S.C. § 2254(d)(1).

Additionally, this Court may "examine the entire course of the state-court proceedings against the defendant in order to determine whether, at some point in the process, the requisite factual finding as to the defendant's culpability has been made. If it has, the finding must be presumed correct." *Cabana v. Bullock*, 474 U.S. 376, 387–88, 106 S.Ct. 689, 88 L.Ed.2d 704

(1986). The necessary finding of intent under *Enmund* may be made by a trial court or an appellate court. *Id.* at 389. In its state writ of *habeas corpus* findings, the Texas Court of Criminal Appeals found that Walker's "crime was marked by great brutality," and that he "displayed great callousness in his actions." Further, Walker "confessed pre-trial [ ] that he bludgeoned both Bo and Virginia Simmons to death and raped Mrs. Simmons." Walker's "confession that he beat both Virginia and Bo Simmons with a stick and raped Mrs. Simmons was never contradicted by evidence presented at trial." These findings show, at the very least, major participation in the felony committed with reckless indifference to human life under *Tison.* Walker's fourth claim will be denied.

In his fifth claim, Walker asserts that improprieties in the prosecutor's closing statement at the guilt phase violated Walker's due process rights. Specifically, Walker complains about comments by the prosecutor that defense counsel acted improperly in examining witnesses and concealing the truth, as well as the prosecutor's conduct in striking counsel table with the murder weapon. This same claim was raised on direct appeal. The Texas Court of Criminal Appeals found that Walker failed to object at trial, and therefore, did not preserve error for appeal. A federal *habeas* court may not consider a state prisoner's claim if the state court based its rejection of that claim on an independent and adequate state ground. *Muniz v. Johnson,* 132 F.3d 214, 219 (5th Cir.), *cert. denied,* 523 U.S. 1113, 118 S.Ct. 1793, 140 L.Ed.2d 933 (1998). The Fifth Circuit has previously held the contemporaneous objection requirement to be an adequate state procedural rule because the Texas appellate courts strictly and regularly enforce it. *See Sharp v. Johnson,* 107 F.3d 282, 285 (5th Cir.1997). This Court is barred from reviewing the claim unless Walker can make the requisite showing of cause and actual prejudice, or

that a fundamental miscarriage of justice would result from the Court's failure to address his federal claims. *See Coleman v. Thompson,* 501 U.S. 722, 750, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). Walker has failed to even attempt to satisfy this burden. Walker's fifth claim will be denied.

In his sixth claim, Walker contends that the Texas capital murder sentencing statute's definition of "mitigating evidence" is unconstitutional because it limits the Eight Amendment concept of "mitigation" to factors that render a capital defendant less morally "blameworthy" for commission of the capital murder. The jury in the instant case was instructed that the term mitigating evidence meant evidence that a juror might regard as reducing the defendant's moral blameworthiness. Walker argues that such a definition precluded jurors from considering evidence that he was remorseful, adjusted well to incarceration after his arrest, and that his family loved him because that evidence did not relate to his "moral blameworthiness."

Walker does not argue that he was prevented from introducing any mitigating evidence, but rather, that the instruction prevented the jury from considering the evidence that was introduced. The Fifth Circuit has previously rejected claims that the "Texas statutory capital sentencing scheme is invalid as preventing or chilling defense counsel's development of mitigating evidence." *Woods v. Johnson,* 75 F.3d 1017, 1033 (5th Cir.), *cert. denied,* 519 U.S. 854, 117 S.Ct. 150, 136 L.Ed.2d 96 (1996). The Court will deny Walker's sixth claim.

In his seventh claim, Walker contends that the statutory *Penry* special issue is facially unconstitutional under the Eighth and Fourteenth Amendments because it permits the very type of open-ended discretion condemned by the Supreme Court in *Furman v. Georgia,* 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972). In *Penry,* the Supreme Court held the Texas "special issues" unconstitutional as applied because the "future dangerousness" inquiry did not allow the jury to consider the

defendant's mental retardation and violent background in mitigation. *See Penry v. Lynaugh*, 492 U.S. 302, 328, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989). In response, the Texas Legislature added another question, which asks jurors: "Whether, taking into consideration all of the evidence, including the circumstances of the offense, the defendant's character and background, and the personal moral culpability of the defendant, there is a sufficient mitigating circumstance or circumstances to warrant that a sentence of life imprisonment rather than a death sentence be imposed." Tex.Code Crim.Pro. art. 37.071, § 2(e)(1).

In *Furman*, the Supreme Court held that the death penalty could not be constitutionally imposed unless the discretion of the sentencer is "suitably directed and limited so as to minimize the risk of wholly arbitrary and capricious action." *Gregg v. Georgia*, 428 U.S. 153, 189, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976). The Texas special issues have previously been recognized, in other contexts, as sufficient guides to jury discretion. *See Franklin v. Lynaugh*, 487 U.S. 164, 182, 108 S.Ct. 2320, 101 L.Ed.2d 155 (1988); *Jurek v. Texas*, 428 U.S. 262, 275–76, 96 S.Ct. 2950, 49 L.Ed.2d 929 (1976). The Supreme Court has recognized that the Texas special issues adequately "allo[w] the jury to consider the mitigating aspects of the crime and the unique characteristics of the perpetrator, and therefore sufficiently provid[e] for jury discretion." *See Lowenfield v. Phelps*, 484 U.S. 231, 245, 108 S.Ct. 546, 98 L.Ed.2d 568, *reh'g denied*, 485 U.S. 944, 108 S.Ct. 1126, 99 L.Ed.2d 286 (1988). Walker's seventh claim will be denied.

In his eighth and final claim, Walker alleges that the death penalty, as presently administered in Texas, constitutes cruel and unusual punishment under the Eighth and Fourteenth Amendments. Walker adopts Justice Blackmun's dissent in *Collins v. Collins*, 510 U.S. 1141, 114 S.Ct. 1127, 127 L.Ed.2d 435 (1994), and specifically Blackmun's statement that "[e]xperi-

ence has taught us that the constitutional goal of eliminating arbitrariness and discrimination from the administration of death can never be achieved without compromising an equally essential component of fundamental fairness—individualized sentencing." (internal citations omitted). While Walker relies on the dissent in *Collins*, the majority upheld the petitioner's punishment.

Walker also argues that capital sentencing in Texas is racially motivated. The Supreme Court has held that a defendant "who alleges an equal protection violation has the burden of proving 'the existence of purposeful discrimination.' A corollary to this principle is that a criminal defendant must prove that the purposeful discrimination 'had a discriminatory effect' on him." *McCleskey v. Kemp*, 481 U.S. 279, 289, 107 S.Ct. 1756, 95 L.Ed.2d 262 (1987). Thus, to prevail on his claim, Walker must prove that the decisionmakers in his case acted with discriminatory purpose. Walker makes a general argument that systematic racial discrimination plagues the Texas death penalty, particularly discrimination based on the race of the victim. Walker does not demonstrate, however, that any decisionmakers connected with his trial, including the jury selected in his case, fostered any racial animus or acted with discriminatory intent toward him in answering the special issues, or at any point in the trial of his case. Walker's eighth claim will, therefore, be denied.

The Court finds that there are no material issues of fact and that Respondent is entitled to judgment as a matter of law on each of the claims raised in Walker's petition. Walker's Motion for Summary Judgment will be GRANTED. Walker's petition for writ of *habeas corpus* will be DENIED. An order will be entered.