02-10-004-CR









 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

NO. 02-10-00004-CR

 

 


 
 
 Jerrod Lovell Lewis
 
 
  
 
 
 APPELLANT
 
 
 
 
  
 V.
  
 
 
 
 
 The State of Texas
 
 
  
 
 
 STATE
 
 


 

 

----------

 

FROM Criminal
District Court No. 2 OF Tarrant COUNTY

----------

 

MEMORANDUM
OPINION[1]

----------

 

Introduction

          Appellant
Jerrod Lovell Lewis appeals his convictions on three counts of continuous
sexual abuse of young children.  See Tex. Penal Code Ann. § 21.02 (West
2011).  We affirm in part and reverse in part.

Factual
and Procedural Background

          A.M.
was seven years old and A.R. was five years old when their mother, M.N., married
Appellant on July 4, 2005.  Up until a week after the wedding, when M.N. and
Appellant leased an apartment in Grand Prairie, the girls and their mother had lived
with M.N.’s parents in Arlington.  When their mother moved in with Appellant, the
girls stayed with the grandparents, whose home was closer to the girls’ school
in Fort Worth.

          M.N.
and Appellant moved to Benbrook the following summer, and the girls joined them
at the new apartment.  There the girls shared a bedroom with a bunk bed.  A.M.
slept on the top bunk and A.R. slept on the bottom until September 2008 when they
switched places because A.M. hurt her knee on a field trip and could no longer climb
the ladder to the top bunk.

          That
Thanksgiving, M.N. took her daughters to Maryland for a family reunion.  Around
three o’clock in the morning on Thanksgiving Day 2008, A.R. told her mother
that Appellant had been coming into her bedroom during the nighttime and touching
her inappropriately.  M.N. woke up A.M., who had been sleeping in the next room,
and asked her if Appellant had done anything to her.  A.M. denied that he had,
but by the end of the day she confided in her grandmother that Appellant had
been molesting her as well.

          The
family returned to Texas and M.N. contacted the police the next day.  Following
an investigation, Appellant was charged with three counts of continuous sexual
abuse of a young child or children.  In count one, the State alleged that Appellant
had committed the offense against both A.R. and A.M.  In counts two and three
respectively, the State alleged that he had committed the offenses against each
child, individually.  The case went to a jury, which convicted Appellant on all
three counts and assessed his punishment at thirty-four years’ confinement on
each count.  The trial court sentenced Appellant accordingly, ordering the
sentences to run concurrently.

Issues
on Appeal

          In
five points on appeal, Appellant contends that the trial court erred by denying
his motion to dismiss, that his convictions on two of the counts were jeopardy
barred, that the evidence is insufficient, and that the prosecutor engaged in
improper jury argument.

Double
Jeopardy

          In
his second point, Appellant claims he suffered double jeopardy.  The State
agrees that there is a double jeopardy problem in this case, but disagrees with
Appellant as to which of his three convictions was barred.  Appellant argues
that two of them are barred, and the State replies that only one is.

          The
jury returned guilty verdicts on three counts of continuous sexual abuse, and
it assessed three identical prison sentences, which the trial court ordered to
run concurrently.  The verdict on count one was for abuse committed against
both children; the verdict on count two was for abuse against only one of them;
and the verdict on count three was for abuse against the other.

          Appellant
contends that the verdicts on counts two and three were jeopardy barred by the
jury having found him guilty of the same offenses in count one.  The State replies
that only the conviction on count one is barred by double jeopardy.

          The
Double Jeopardy Clause of the United States Constitution provides that no
person shall be subjected to twice having life or limb in jeopardy for the same
offense.  U.S. Const. amend. V.  Generally, this clause protects against (1) a
second prosecution for the same offense after acquittal, (2) a second
prosecution for the same offense after conviction, and (3) multiple punishments
for the same offense.  Brown v. Ohio, 432 U.S. 161, 164–65, 97 S. Ct.
2221, 2225 (1977); Ex parte Cavazos, 203 S.W.3d 333, 336 (Tex. Crim.
App. 2006).  A double jeopardy violation occurs even when the sentences are
ordered to run concurrently and the jeopardy-barred conviction does not result
in a greater sentence.  Evans v. State, 299 S.W.3d 138, 141 (Tex. Crim.
App. 2009) (citing Ball v. United States, 470 U.S. 856, 864–65, 105 S.
Ct. 1668, 1673 (1985)).

          This
case involves the multiple-punishment category of protection provided by the Double
Jeopardy Clause of the Fifth Amendment.  The jury found Appellant guilty on
three counts of continuous sexual abuse of a child by indecency with a child,
all alleged to have occurred within the same thirty-day period.  It found him
guilty in count one of committing the offense against both A.M. and A.R.,
alleged jointly in the indictment; in count two, against A.M. only; and in
count three, against A.R. only.  The jury assessed Appellant’s punishment at thirty-four
years’ confinement on each count, which the trial court ordered to run
concurrently.  We agree with the parties that all three convictions cannot
stand.  See generally Blockburger v. United States, 284 U.S. 299, 304,
52 S. Ct. 180, 182 (1932); Bigon v. State, 252 S.W.3d 360, 370–71 (Tex.
Crim. App. 2008); Langs v. State, 183 S.W.3d 680, 689 (Tex. Crim. App.
2006); Ortega v. State, 171 S.W.3d 895, 899–900 (Tex. Crim. App. 2005).

          We
further agree that either remedy urged by the parties would eliminate double
jeopardy from this case.  For instance, if we reverse the convictions on counts
two and three for the offenses committed against the children, individually, as
Appellant asks us to do, then the conviction on count one for the offense
committed against them alleged jointly would be proper.  On the other hand, if
we applied the State’s remedy, vacating the conviction on count one, which was
based on the indictment’s alleging the children jointly, the convictions on
counts two and three for the offenses against them individually could remain
because each is for an offense committed against separate individuals.  See
Tex. Penal Code Ann. § 21.02(f).

          When
a defendant is subjected to multiple punishments for the same conduct, in
violation of double jeopardy, the remedy is to apply “the most serious offense test.@  See
Bigon, 252 S.W.3d at 373.  The Amost
serious@
offense is the offense for which the greatest sentence was assessed.  Cavazos,
203 S.W.3d at 338 (overruling Landers v. State, 957 S.W.2d 558, 559–60
(Tex. Crim. App. 1997), which held that other factors—such as the degree of the
felony, range of punishment, and rules governing parole eligibility and
awarding of good-conduct time—should be used in that determination); see
also Evans v. State, 299 S.W.3d 138, 141 (Tex. Crim. App. 2009); Bigon,
252 S.W.3d at 373.  And further, when the convictions for multiple offenses
returned in a single criminal action violate double jeopardy, and two or more offenses
carry the same punishment, the appellate court may strike either conviction.  See
Martinez v. State, 225 S.W.3d 550, 555 (Tex. Crim. App. 2007).

          We
have already discussed that either remedy proposed by the parties would
eliminate the double jeopardy problem presented here.  The remaining question involves
the proper remedy.  Appellant received identical prison sentences for each
count.  In applying the most serious offense test, therefore, no conviction is
more “serious” than the other because none resulted in a greater punishment assessed. 
Applying Appellant’s remedy and striking two convictions would reduce his
punishment from three concurrent sentences to only one, while applying the
State’s remedy would reduce Appellant’s punishment from three to two.    Appellant’s
remedy produces one thirty-four-year sentence.  The State’s remedy produces two
thirty-four-year sentences.  The remedy most compatible with the most serious
offense test, therefore, is that urged by the State.  Accordingly, we adopt the
State’s remedy, sustain Appellant’s second point in part, and overrule it in
part.




 

Sufficiency
of the Evidence

          In
his third and fourth points, Appellant contends that the evidence is legally
and factually insufficient to support the jury’s verdicts.  The court of
criminal appeals has held that there is no meaningful distinction between the
legal sufficiency standard and the factual sufficiency standard.  Brooks v.
State, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010) (overruling Clewis v.
State, 922 S.W.2d 126, 131–32 (Tex. Crim. App. 1996)).  The Jackson
standard is the “only standard that a reviewing court should apply in
determining whether the evidence is sufficient to support each element of a
criminal offense that the State is required to prove beyond a reasonable
doubt.”  Id. (citing Jackson v. Virginia, 443 U.S. 307, 99 S. Ct.
2781(1979)).  Accordingly, we overrule Appellant’s third point in which he asserts
that the evidence is factually insufficient.  See id.

          Because
of our disposition of his second point above, we address the sufficiency of the
evidence to support the verdicts on only the second and third counts.

          In
our due process review of the sufficiency of the evidence to support a
conviction, we view all the evidence in the light most favorable to the verdict
to determine whether any rational trier of fact could have found the essential
elements of the offense beyond a reasonable doubt.  Jackson, 443 U.S. at
319, 99 S. Ct. at 2789; Clayton v. State, 235 S.W.3d 772, 778 (Tex.
Crim. App. 2007).  This standard gives full play to the responsibility of the
trier of fact to resolve conflicts in the testimony, to weigh the evidence, and
to draw reasonable inferences from basic facts to ultimate facts.  Jackson,
443 U.S. at 319, 99 S. Ct. at 2789; Clayton, 235 S.W.3d at 778.

          The
penal code provides that a person commits the offense of continuous sexual
abuse of a young child or children if:

(1) during a period
that is 30 or more days in duration, the person commits two or more acts of
sexual abuse, regardless of whether the acts of sexual abuse are committed
against one or more victims; and

 

(2) at the time of
the commission of each of the acts of sexual abuse, the actor is 17 years of
age or older and the victim is a child younger than 14 years of age.

 

Tex.
Penal Code Ann. § 21.02(b).

          “Act
of sexual abuse” includes indecency with a child under Section 21.11(a)(1) of
the penal code if the actor committed the offense in a manner other than by
touching the child’s breast.  Id. § 21.02(c)(2).

          Indecency
with a child under Section 21.11(a)(1) includes touching a child’s anus or any
part of their genitals with intent to arouse or gratify sexual desire.  Id.
§ 21.11(a)(1), (c)(1) (West 2011).

          The
jury found Appellant guilty of continuous sexual abuse by indecency with a
child committed against A.M. as alleged in count two and against A.R. as
alleged in count three.

Count
Two:  Continuous Sexual Abuse Against A.M.

          A.M.’s
grandmother, C.T., testified that the day she arrived in Maryland for the
family reunion, M.N. told her that A.R. had said “some disturbing things to her
that her stepfather had been doing.”  C.T. further testified that she did not
talk to A.R. about what A.R. had told M.N., but that when she spoke to A.M.,
A.M. told her that Appellant would come into the girls’ room at night, massage A.M.’s
feet, work his way up her legs to her tummy, and put his finger into her vagina. 
When C.T. asked how long this had been going on, A.M. replied, “[E]very school
night.”  A.M. said, “[T]he only time it doesn’t happen, Grandma, is the
weekends when I’m with you and grandpa.”  A.M. told her grandmother that Appellant
had said that “if she told anyone, she would break up the family, her mother
would be crying all the time and every time she looked at her, she would blame
her for ruining the family and breaking them up.”

          A.M.
testified that at the time of the trial she was an eleven-year-old sixth grader
at Della Eisenhower Intermediate School.  She testified that she had shared a bedroom
and a bunk bed with her sister at an apartment in Benbrook, where the two had
lived with their mother, their younger brother and Appellant.  She further
testified that she had slept on the top bunk before she hurt her knee; that
after she hurt her knee she had to sleep on the bottom for a while; that starting
when she slept on the top and continuing through the time she slept on the
bottom, Appellant came into the room when it was dark in the middle of the
night and did something strange to her more than once, many times, in fact.  She
testified that Appellant would start by rubbing her feet and then would rub her
legs; that she never asked him to rub her legs; that neither of them would say
anything; and that sometimes she would pretend to be asleep.  She further
testified that after he rubbed her legs, he would start touching her “front
private part,” the part she pees from, with his hands and fingers underneath
her pajamas and underwear.  She testified that his hands would be moving—his fingers
moving up and down—and that sometimes it hurt because of his fingernails; that
he touched “[b]etween” the lips of her private parts; that his finger went
inside her hole “once or twice;” and that he would breathe faster than he
normally did when he touched her this way.

          She
further testified, “He would do something called the smell check.  He would
make you bend down and pull down your pants and then he’ll smell your front
private and your back private.”  She testified that his nose would actually
touch her front private part sometimes and that it would always touch the hole
of her back private.

          M.N.
testified that Appellant was over seventeen years of age at the time of the
offenses, that he was not married to A.M. or A.R., and that he lived with M.N.
and the girls in Benbrook, Tarrant County, Texas, from the summer of 2006 until
the outcries that the girls made over Thanksgiving 2008.

          We
hold that this evidence is sufficient to support a rational jury’s belief
beyond a reasonable doubt that Appellant committed the offense of continuous
sexual abuse of A.M., as alleged in the indictment, and that the evidence is,
therefore, sufficient to sustain Appellant’s conviction on count two.




 

Count
Three:  Continuous Sexual Abuse Against A.R.

          A.R.
testified that starting when she was seven years old when she lived in an
apartment with her mom, sister, baby brother, and Appellant, Appellant came into
her room at night more than ten times.  She testified that each time he would start
massaging her feet, would start moving up her leg and her thigh, and then “would
start touching [her] private parts.”  She testified that this happened while
she was on the bottom bunk and that it continued when she moved to the top bunk
after her sister hurt her knee.  Appellant would climb on the bunk bed ladder
or stand on a chair.  A.R. explained that by her private part, she meant the place
she “go[es] pee from;” and that Appellant would touch her with his hand on her
front private.  She normally wore pajamas to bed—long pants and a shirt—and Appellant
would touch her inside her underwear, would touch the outside first, and then put
his hand inside her front private.  She said that “he would either just stay
still or he would like move his hand” and that it “would hurt.”  She testified
that she did not know if it hurt because of a fingernail, that his nail would
not poke her every time, but that Appellant would touch her on her privates
every time he came in and “[m]ore than one time a night.”  She testified that
when he came into her bedroom she would be halfway asleep because she was
tired:  “Well, I was halfway asleep because I have a hard time sleeping, but I
was tired.”  She also explained that “he used to like breath[e] like really
hard.”  She further testified that the last time he did this to her was when
she was either eight or nine years old before she went to Maryland over Thanksgiving
2008.

          Finally,
A.R. testified that after a bath, Appellant would tell her to go into his room
and that he would sniff her privates, front and back.

          M.N.
testified that A.R. stayed awake until the wee hours of Thanksgiving 2008 and
told her about what Appellant had been doing to her and asked her to tell him
to stop.

          We
hold the evidence is sufficient to support Appellant’s conviction on count
three.  Because the evidence is sufficient to support Appellant’s convictions
under counts two and three, we overrule Appellant’s fourth point.

Motion
to Dismiss

          In
his first point, Appellant challenges the trial court’s denial of his motion to
dismiss, which he urges us to treat as a motion to quash the indictment.  He
contends that the indictment should have been quashed because it permitted a
nonunanimous guilty verdict.  He claims that juror unanimity is required by
several federal constitutional provisions, including the Equal Protection
Clause and the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United
States Constitution.

          The
Sixth Amendment to the United States Constitution requires unanimous jury
verdicts in federal criminal trials.  Andres v. United States, 333 U.S.
740, 748, 68 S. Ct. 880, 884 (1948).  And the Sixth Amendment applies to the
states through the Fourteenth Amendment.  Duncan v. Louisiana, 391 U.S.
145, 149–50, 88 S. Ct. 1444, 1447–48 (1968).  However, we have found no United
States Supreme Court authority requiring juror unanimity in state cases.  To
the contrary, in Apodaca v. Oregon, a four-justice plurality on the
Supreme Court wrote that the Sixth Amendment does not require a unanimous
verdict in state court.  406 U.S. 404, 411–12, 92 S. Ct. 1628, 1633 (1972); see
Phillips v. State, 130 S.W.3d 343, 351 n.6 (Tex. App.—Houston [14th Dist.]
2004) (citing Apodaca, the court stated, “The United States Constitution
clearly does not grant a right to a unanimous verdict.”), aff’d, 193
S.W.3d 904 (Tex. Crim. App. 2006).

          The
Texas constitution, however, does require a unanimous verdict.  And although Appellant
did not specifically cite the Texas constitution either in the trial court or
in his brief, he cites Pizzo v. State, 235 S.W.3d 711 (Tex. Crim. App.
2007), which recognized a juror unanimity requirement in our state constitution. 
Id. at 719.  We will, therefore, consider Appellant’s claim under the
Texas constitution.  Because we have vacated his conviction on count one, however,
we will consider his juror unanimity claim only with regard to counts two and
three.

          In
Pizzo, the State sought a conviction for a single act of indecency with
a child but charged two different offenses in the disjunctive, which permitted
a conviction on a nonunanimous verdict.  Id. at 714.  Here, however, in
each of the counts alleging offenses committed against the children
individually, the State sought convictions for a “series” of acts of sexual
abuse with evidence that, during the relevant time period, Appellant committed
two or more different acts that the statute defines as means of committing a
single criminal offense and not as two or more separate offenses.  See
Tex. Penal Code Ann. § 21.02.  That statute does not make each act a separate
element but creates a single element, a “series” of sexual abuse.  Id. 
Jurors must agree unanimously only that the defendant, during a period of
thirty or more days, committed two or more acts of sexual abuse.  Id. 
Accordingly, the statute does not violate any constitutional requirements for
juror unanimity, and the trial court did not abuse its discretion by overruling
Appellant’s motion to dismiss or by not quashing the indictment.  See Reckart
v. State, 323 S.W.3d 588, 600 (Tex. App.—Corpus Christi 2010, pet. ref’d); Render
v. State, 316 S.W.3d 846, 857–58 (Tex. App.—Dallas 2010, pet. ref’d); see
also Landrian v. State, 268 S.W.3d 532, 535 (Tex. Crim. App. 2008) (noting
that the legislature has considerable discretion in defining crimes and the
manner in which they can be committed); Jefferson v. State, 189 S.W.3d
305, 312–13 (Tex. Crim. App.), cert. denied, 549 U.S. 957 (2006)
(holding that injury to a child could be caused multiple ways and that the jury
does not have to be unanimous as to which particular act or omission defendant
committed).  Therefore, we overrule Appellant’s first point.

Jury
Argument

          In
point five, Appellant contends that the trial court erred by overruling his
objection to the prosecutor telling the jury during closing argument at
punishment to assume that Appellant’s sentences would run concurrently.

          The
record during the State’s closing remarks at the punishment phase shows the
following:

          [THE
PROSECUTOR]:  One thing I don’t want you guys to concern yourself with when you
go back there because you found him guilty of three counts of continuous sexual
abuse.  I don’t want you guys to worry about it, because it’s not your job to
worry about it, whether or not he is going to serve the sentences you give him
concurrently, altogether, or consecutively.  Because that will be the Judge’s
decision.  Okay.  That’s not for you guys to worry about.

 

          What you
can assume and what you should assume is that he will serve them concurrently. 
And the other thing —

 

          MR. WHITE
[for Appellant]:  Excuse me.  I object to inviting them to speculate about
matters not in evidence, Judge.

 

          THE COURT:  All
right.

 

          MR. WHITE: 
That’s outside the record.

 

          THE COURT: 
This is just final arguments, not evidence.

 

          MR. WHITE: 
Is that overruled, then?

 

          THE COURT: 
That’s overruled.

 

          During
deliberations, the jury sent out a note to the trial court.

          THE COURT: 
All right.  I got a note it says:  At this point in the trial does the judge
have discretion to determine if the punishment on each of these counts is
served consecutively or concurrently or is there specific Texas law governing
this matter?  Please do not concern yourselves with this issue.  It’s a matter
to be determined by the Court.  Please refer to the charge of the Court and
continue your deliberations.  Both sides agree?

 

          MR. NICKOLS
[for the State]:  No objection.

 

          MR. WHITE: 
No objection.

          Even
if we were to assume that the State’s argument was improper and that the trial
court thereby erred to overrule Appellant’s objection, we would hold that it
did not cause Appellant harm.  See Tex.
R. App. P. 44.2(b); Martinez v. State, 17 S.W.3d 677, 692–93 (Tex. Crim.
App. 2000); Mosley v. State, 983 S.W.2d 249, 259 (Tex. Crim. App. 1998)
(op. on reh’g), cert. denied, 526 U.S. 1070 (1999).  Haliburton v.
State is illustrative.  578 S.W.2d 726 (Tex. Crim. App. [Panel op.] 1979),
cited approvingly by Gordon v. State, 633 S.W.2d 872, 879 (Tex. Crim.
App. [Panel op.] 1982).  In Haliburton, the appellant had been convicted
of two counts of aggravated robbery.  578 S.W.2d at 728.  While deliberating on
punishment, the jury sent a note to the trial judge asking whether Haliburton’s
two sentences would run concurrently.  Id.  The judge responded in the
affirmative.  Id.  On appeal, Haliburton claimed that he was harmed by
the trial court’s response.  Id.  A majority of the panel wrote,

[W]e are unable to
presume harm in this situation.  Knowledge that the sentences would run
concurrently is a two-edged sword.  The information could have been used to
increase the punishment or, just as easily, used to reduce the number of years
to avoid excessive punishment.  We cannot determine from the record which path
the jury took and, with these alternatives, harm will not be presumed.

Id.

          Moreover,
we generally presume juries follow trial court instructions and will not
reverse absent evidence rebutting the presumption.  Colburn v. State,
966 S.W.2d 511, 520 (Tex. Crim. App. 1998); see Williams v. State, 937
S.W.2d 479, 490 (Tex. Crim. App. 1996).  In response to the jury’s note, the
trial court returned the following instruction: “Please do not concern
yourselves with this issue.  It’s a matter to be determined by the Court. 
Please refer to the charge of the Court and continue your deliberations.” 
Appellant agreed to this instruction and now points to no evidence that the
jury disobeyed it.  Accordingly, the presumption that the jury followed the
court’s instruction and disregarded the complained-of remarks stands.  We
overrule Appellant’s fifth point.

Conclusion

          Having
sustained Appellant’s second point in part and having overruled all of the
remaining points, we vacate the trial court’s judgment for count one and affirm
the judgments for counts two and three.

 

 

LEE GABRIEL

JUSTICE

 

PANEL: 
LIVINGSTON,
C.J.; MEIER and GABRIEL, JJ.

 

DO
NOT PUBLISH

Tex.
R. App. P. 47.2(b)

 

DELIVERED:  July 14, 2011








 









[1]See Tex. R. App. P. 47.4.