

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 02-10-00004-CR

JERROD LOVELL LEWIS                                                       APPELLANT

V.

THE STATE OF TEXAS                                                              STATE

----------

FROM CRIMINAL DISTRICT COURT NO. 2 OF TARRANT COUNTY

----------

## MEMORANDUM OPINION[1]

----------

### Introduction

Appellant Jerrod Lovell Lewis appeals his convictions on three counts of continuous sexual abuse of young children.  *See* Tex. Penal Code Ann. § 21.02 (West 2011).  We affirm in part and reverse in part.

---

[1]*See* Tex. R. App. P. 47.4.

## Factual and Procedural Background

A.M. was seven years old and A.R. was five years old when their mother, M.N., married Appellant on July 4, 2005. Up until a week after the wedding, when M.N. and Appellant leased an apartment in Grand Prairie, the girls and their mother had lived with M.N.'s parents in Arlington. When their mother moved in with Appellant, the girls stayed with the grandparents, whose home was closer to the girls' school in Fort Worth.

M.N. and Appellant moved to Benbrook the following summer, and the girls joined them at the new apartment. There the girls shared a bedroom with a bunk bed. A.M. slept on the top bunk and A.R. slept on the bottom until September 2008 when they switched places because A.M. hurt her knee on a field trip and could no longer climb the ladder to the top bunk.

That Thanksgiving, M.N. took her daughters to Maryland for a family reunion. Around three o'clock in the morning on Thanksgiving Day 2008, A.R. told her mother that Appellant had been coming into her bedroom during the nighttime and touching her inappropriately. M.N. woke up A.M., who had been sleeping in the next room, and asked her if Appellant had done anything to her. A.M. denied that he had, but by the end of the day she confided in her grandmother that Appellant had been molesting her as well.

The family returned to Texas and M.N. contacted the police the next day. Following an investigation, Appellant was charged with three counts of continuous sexual abuse of a young child or children. In count one, the State

2

alleged that Appellant had committed the offense against both A.R. and A.M. In counts two and three respectively, the State alleged that he had committed the offenses against each child, individually. The case went to a jury, which convicted Appellant on all three counts and assessed his punishment at thirty-four years' confinement on each count. The trial court sentenced Appellant accordingly, ordering the sentences to run concurrently.

## Issues on Appeal

In five points on appeal, Appellant contends that the trial court erred by denying his motion to dismiss, that his convictions on two of the counts were jeopardy barred, that the evidence is insufficient, and that the prosecutor engaged in improper jury argument.

## Double Jeopardy

In his second point, Appellant claims he suffered double jeopardy. The State agrees that there is a double jeopardy problem in this case, but disagrees with Appellant as to which of his three convictions was barred. Appellant argues that two of them are barred, and the State replies that only one is.

The jury returned guilty verdicts on three counts of continuous sexual abuse, and it assessed three identical prison sentences, which the trial court ordered to run concurrently. The verdict on count one was for abuse committed against both children; the verdict on count two was for abuse against only one of them; and the verdict on count three was for abuse against the other.

3

Appellant contends that the verdicts on counts two and three were jeopardy barred by the jury having found him guilty of the same offenses in count one. The State replies that only the conviction on count one is barred by double jeopardy.

The Double Jeopardy Clause of the United States Constitution provides that no person shall be subjected to twice having life or limb in jeopardy for the same offense. U.S. Const. amend. V. Generally, this clause protects against (1) a second prosecution for the same offense after acquittal, (2) a second prosecution for the same offense after conviction, and (3) multiple punishments for the same offense. *Brown v. Ohio*, 432 U.S. 161, 164–65, 97 S. Ct. 2221, 2225 (1977); *Ex parte Cavazos*, 203 S.W.3d 333, 336 (Tex. Crim. App. 2006). A double jeopardy violation occurs even when the sentences are ordered to run concurrently and the jeopardy-barred conviction does not result in a greater sentence. *Evans v. State*, 299 S.W.3d 138, 141 (Tex. Crim. App. 2009) (citing *Ball v. United States*, 470 U.S. 856, 864–65, 105 S. Ct. 1668, 1673 (1985)).

This case involves the multiple-punishment category of protection provided by the Double Jeopardy Clause of the Fifth Amendment. The jury found Appellant guilty on three counts of continuous sexual abuse of a child by indecency with a child, all alleged to have occurred within the same thirty-day period. It found him guilty in count one of committing the offense against both A.M. and A.R., alleged jointly in the indictment; in count two, against A.M. only; and in count three, against A.R. only. The jury assessed Appellant's punishment

4

at thirty-four years' confinement on each count, which the trial court ordered to run concurrently. We agree with the parties that all three convictions cannot stand. *See generally Blockburger v. United States*, 284 U.S. 299, 304, 52 S. Ct. 180, 182 (1932); *Bigon v. State*, 252 S.W.3d 360, 370–71 (Tex. Crim. App. 2008); *Langs v. State*, 183 S.W.3d 680, 689 (Tex. Crim. App. 2006); *Ortega v. State*, 171 S.W.3d 895, 899–900 (Tex. Crim. App. 2005).

We further agree that either remedy urged by the parties would eliminate double jeopardy from this case. For instance, if we reverse the convictions on counts two and three for the offenses committed against the children, individually, as Appellant asks us to do, then the conviction on count one for the offense committed against them alleged jointly would be proper. On the other hand, if we applied the State's remedy, vacating the conviction on count one, which was based on the indictment's alleging the children jointly, the convictions on counts two and three for the offenses against them individually could remain because each is for an offense committed against separate individuals. *See* Tex. Penal Code Ann. § 21.02(f).

When a defendant is subjected to multiple punishments for the same conduct, in violation of double jeopardy, the remedy is to apply "the most serious offense test." *See Bigon*, 252 S.W.3d at 373. The "most serious" offense is the offense for which the greatest sentence was assessed. *Cavazos*, 203 S.W.3d at 338 (overruling *Landers v. State*, 957 S.W.2d 558, 559–60 (Tex. Crim. App. 1997), which held that other factors—such as the degree of the felony, range of

5

punishment, and rules governing parole eligibility and awarding of good-conduct time—should be used in that determination); *see also Evans v. State*, 299 S.W.3d 138, 141 (Tex. Crim. App. 2009); *Bigon*, 252 S.W.3d at 373. And further, when the convictions for multiple offenses returned in a single criminal action violate double jeopardy, and two or more offenses carry the same punishment, the appellate court may strike either conviction. *See Martinez v. State*, 225 S.W.3d 550, 555 (Tex. Crim. App. 2007).

We have already discussed that either remedy proposed by the parties would eliminate the double jeopardy problem presented here. The remaining question involves the proper remedy. Appellant received identical prison sentences for each count. In applying the most serious offense test, therefore, no conviction is more "serious" than the other because none resulted in a greater punishment assessed. Applying Appellant's remedy and striking two convictions would reduce his punishment from three concurrent sentences to only one, while applying the State's remedy would reduce Appellant's punishment from three to two. Appellant's remedy produces one thirty-four-year sentence. The State's remedy produces two thirty-four-year sentences. The remedy most compatible with the most serious offense test, therefore, is that urged by the State. Accordingly, we adopt the State's remedy, sustain Appellant's second point in part, and overrule it in part.

6

## Sufficiency of the Evidence

In his third and fourth points, Appellant contends that the evidence is legally and factually insufficient to support the jury's verdicts. The court of criminal appeals has held that there is no meaningful distinction between the legal sufficiency standard and the factual sufficiency standard. *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010) (overruling *Clewis v. State*, 922 S.W.2d 126, 131–32 (Tex. Crim. App. 1996)). The *Jackson* standard is the "only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense that the State is required to prove beyond a reasonable doubt." *Id.* (citing *Jackson v. Virginia*, 443 U.S. 307, 99 S. Ct. 2781(1979)). Accordingly, we overrule Appellant's third point in which he asserts that the evidence is factually insufficient. *See id*.

Because of our disposition of his second point above, we address the sufficiency of the evidence to support the verdicts on only the second and third counts.

In our due process review of the sufficiency of the evidence to support a conviction, we view all the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable

inferences from basic facts to ultimate facts.  *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Clayton*, 235 S.W.3d at 778.

The penal code provides that a person commits the offense of continuous sexual abuse of a young child or children if:

> (1) during a period that is 30 or more days in duration, the person commits two or more acts of sexual abuse, regardless of whether the acts of sexual abuse are committed against one or more victims; and

> (2) at the time of the commission of each of the acts of sexual abuse, the actor is 17 years of age or older and the victim is a child younger than 14 years of age.

Tex. Penal Code Ann. § 21.02(b).

"Act of sexual abuse" includes indecency with a child under Section 21.11(a)(1) of the penal code if the actor committed the offense in a manner other than by touching the child's breast.  *Id*. § 21.02(c)(2).

Indecency with a child under Section 21.11(a)(1) includes touching a child's anus or any part of their genitals with intent to arouse or gratify sexual desire.  *Id*. § 21.11(a)(1), (c)(1) (West 2011).

The jury found Appellant guilty of continuous sexual abuse by indecency with a child committed against A.M. as alleged in count two and against A.R. as alleged in count three.

*Count Two:  Continuous Sexual Abuse Against A.M.*

A.M.'s grandmother, C.T., testified that the day she arrived in Maryland for the family reunion, M.N. told her that A.R. had said "some disturbing things to her

8

that her stepfather had been doing." C.T. further testified that she did not talk to A.R. about what A.R. had told M.N., but that when she spoke to A.M., A.M. told her that Appellant would come into the girls' room at night, massage A.M.'s feet, work his way up her legs to her tummy, and put his finger into her vagina. When C.T. asked how long this had been going on, A.M. replied, "[E]very school night." A.M. said, "[T]he only time it doesn't happen, Grandma, is the weekends when I'm with you and grandpa." A.M. told her grandmother that Appellant had said that "if she told anyone, she would break up the family, her mother would be crying all the time and every time she looked at her, she would blame her for ruining the family and breaking them up."

A.M. testified that at the time of the trial she was an eleven-year-old sixth grader at Della Eisenhower Intermediate School. She testified that she had shared a bedroom and a bunk bed with her sister at an apartment in Benbrook, where the two had lived with their mother, their younger brother and Appellant. She further testified that she had slept on the top bunk before she hurt her knee; that after she hurt her knee she had to sleep on the bottom for a while; that starting when she slept on the top and continuing through the time she slept on the bottom, Appellant came into the room when it was dark in the middle of the night and did something strange to her more than once, many times, in fact. She testified that Appellant would start by rubbing her feet and then would rub her legs; that she never asked him to rub her legs; that neither of them would say anything; and that sometimes she would pretend to be asleep. She further

9

testified that after he rubbed her legs, he would start touching her "front private part," the part she pees from, with his hands and fingers underneath her pajamas and underwear. She testified that his hands would be moving—his fingers moving up and down—and that sometimes it hurt because of his fingernails; that he touched "[b]etween" the lips of her private parts; that his finger went inside her hole "once or twice;" and that he would breathe faster than he normally did when he touched her this way.

She further testified, "He would do something called the smell check. He would make you bend down and pull down your pants and then he'll smell your front private and your back private." She testified that his nose would actually touch her front private part sometimes and that it would always touch the hole of her back private.

M.N. testified that Appellant was over seventeen years of age at the time of the offenses, that he was not married to A.M. or A.R., and that he lived with M.N. and the girls in Benbrook, Tarrant County, Texas, from the summer of 2006 until the outcries that the girls made over Thanksgiving 2008.

We hold that this evidence is sufficient to support a rational jury's belief beyond a reasonable doubt that Appellant committed the offense of continuous sexual abuse of A.M., as alleged in the indictment, and that the evidence is, therefore, sufficient to sustain Appellant's conviction on count two.

10

*Count Three: Continuous Sexual Abuse Against A.R.*

A.R. testified that starting when she was seven years old when she lived in an apartment with her mom, sister, baby brother, and Appellant, Appellant came into her room at night more than ten times. She testified that each time he would start massaging her feet, would start moving up her leg and her thigh, and then "would start touching [her] private parts." She testified that this happened while she was on the bottom bunk and that it continued when she moved to the top bunk after her sister hurt her knee. Appellant would climb on the bunk bed ladder or stand on a chair. A.R. explained that by her private part, she meant the place she "go[es] pee from;" and that Appellant would touch her with his hand on her front private. She normally wore pajamas to bed—long pants and a shirt—and Appellant would touch her inside her underwear, would touch the outside first, and then put his hand inside her front private. She said that "he would either just stay still or he would like move his hand" and that it "would hurt." She testified that she did not know if it hurt because of a fingernail, that his nail would not poke her every time, but that Appellant would touch her on her privates every time he came in and "[m]ore than one time a night." She testified that when he came into her bedroom she would be halfway asleep because she was tired: "Well, I was halfway asleep because I have a hard time sleeping, but I was tired." She also explained that "he used to like breath[e] like really hard." She further testified that the last time he did this to her was when she was either eight or nine years old before she went to Maryland over Thanksgiving 2008.

11

Finally, A.R. testified that after a bath, Appellant would tell her to go into his room and that he would sniff her privates, front and back.

M.N. testified that A.R. stayed awake until the wee hours of Thanksgiving 2008 and told her about what Appellant had been doing to her and asked her to tell him to stop.

We hold the evidence is sufficient to support Appellant's conviction on count three. Because the evidence is sufficient to support Appellant's convictions under counts two and three, we overrule Appellant's fourth point.

**Motion to Dismiss**

In his first point, Appellant challenges the trial court's denial of his motion to dismiss, which he urges us to treat as a motion to quash the indictment. He contends that the indictment should have been quashed because it permitted a nonunanimous guilty verdict. He claims that juror unanimity is required by several federal constitutional provisions, including the Equal Protection Clause and the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution.

The Sixth Amendment to the United States Constitution requires unanimous jury verdicts in federal criminal trials. *Andres v. United States*, 333 U.S. 740, 748, 68 S. Ct. 880, 884 (1948). And the Sixth Amendment applies to the states through the Fourteenth Amendment. *Duncan v. Louisiana*, 391 U.S. 145, 149–50, 88 S. Ct. 1444, 1447–48 (1968). However, we have found no United States Supreme Court authority requiring juror unanimity in state cases.

12

To the contrary, in *Apodaca v. Oregon*, a four-justice plurality on the Supreme Court wrote that the Sixth Amendment does not require a unanimous verdict in state court. 406 U.S. 404, 411–12, 92 S. Ct. 1628, 1633 (1972); *see Phillips v. State*, 130 S.W.3d 343, 351 n.6 (Tex. App.—Houston [14th Dist.] 2004) (citing *Apodaca*, the court stated, "The United States Constitution clearly does not grant a right to a unanimous verdict."), *aff'd*, 193 S.W.3d 904 (Tex. Crim. App. 2006).

The Texas constitution, however, does require a unanimous verdict. And although Appellant did not specifically cite the Texas constitution either in the trial court or in his brief, he cites *Pizzo v. State*, 235 S.W.3d 711 (Tex. Crim. App. 2007), which recognized a juror unanimity requirement in our state constitution. *Id*. at 719. We will, therefore, consider Appellant's claim under the Texas constitution. Because we have vacated his conviction on count one, however, we will consider his juror unanimity claim only with regard to counts two and three.

In *Pizzo*, the State sought a conviction for a single act of indecency with a child but charged two different offenses in the disjunctive, which permitted a conviction on a nonunanimous verdict. *Id*. at 714. Here, however, in each of the counts alleging offenses committed against the children individually, the State sought convictions for a "series" of acts of sexual abuse with evidence that, during the relevant time period, Appellant committed two or more different acts that the statute defines as means of committing a single criminal offense and not as two or more separate offenses. *See* Tex. Penal Code Ann. § 21.02. That

13

statute does not make each act a separate element but creates a single element, a "series" of sexual abuse. *Id.* Jurors must agree unanimously only that the defendant, during a period of thirty or more days, committed two or more acts of sexual abuse. *Id.* Accordingly, the statute does not violate any constitutional requirements for juror unanimity, and the trial court did not abuse its discretion by overruling Appellant's motion to dismiss or by not quashing the indictment. *See Reckart v. State*, 323 S.W.3d 588, 600 (Tex. App.—Corpus Christi 2010, pet. ref'd); *Render v. State*, 316 S.W.3d 846, 857–58 (Tex. App.—Dallas 2010, pet. ref'd); *see also Landrian v. State*, 268 S.W.3d 532, 535 (Tex. Crim. App. 2008) (noting that the legislature has considerable discretion in defining crimes and the manner in which they can be committed); *Jefferson v. State*, 189 S.W.3d 305, 312–13 (Tex. Crim. App.), *cert. denied*, 549 U.S. 957 (2006) (holding that injury to a child could be caused multiple ways and that the jury does not have to be unanimous as to which particular act or omission defendant committed). Therefore, we overrule Appellant's first point.

## Jury Argument

In point five, Appellant contends that the trial court erred by overruling his objection to the prosecutor telling the jury during closing argument at punishment to assume that Appellant's sentences would run concurrently.

The record during the State's closing remarks at the punishment phase shows the following:

14

[THE PROSECUTOR]: One thing I don't want you guys to concern yourself with when you go back there because you found him guilty of three counts of continuous sexual abuse. I don't want you guys to worry about it, because it's not your job to worry about it, whether or not he is going to serve the sentences you give him concurrently, altogether, or consecutively. Because that will be the Judge's decision. Okay. That's not for you guys to worry about.

What you can assume and what you should assume is that he will serve them concurrently. And the other thing —

MR. WHITE [for Appellant]: Excuse me. I object to inviting them to speculate about matters not in evidence, Judge.

THE COURT: All right.

MR. WHITE: That's outside the record.

THE COURT: This is just final arguments, not evidence.

MR. WHITE: Is that overruled, then?

THE COURT: That's overruled.

During deliberations, the jury sent out a note to the trial court.

THE COURT: All right. I got a note it says: At this point in the trial does the judge have discretion to determine if the punishment on each of these counts is served consecutively or concurrently or is there specific Texas law governing this matter? Please do not concern yourselves with this issue. It's a matter to be determined by the Court. Please refer to the charge of the Court and continue your deliberations. Both sides agree?

MR. NICKOLS [for the State]: No objection.

MR. WHITE: No objection.

Even if we were to assume that the State's argument was improper and that the trial court thereby erred to overrule Appellant's objection, we would hold that it did not cause Appellant harm. *See* Tex. R. App. P. 44.2(b); *Martinez v.*

15

*State*, 17 S.W.3d 677, 692–93 (Tex. Crim. App. 2000); *Mosley v. State*, 983 S.W.2d 249, 259 (Tex. Crim. App. 1998) (op. on reh'g), *cert. denied*, 526 U.S. 1070 (1999). *Haliburton v. State* is illustrative. 578 S.W.2d 726 (Tex. Crim. App. [Panel op.] 1979), cited approvingly by *Gordon v. State*, 633 S.W.2d 872, 879 (Tex. Crim. App. [Panel op.] 1982). In *Haliburton*, the appellant had been convicted of two counts of aggravated robbery. 578 S.W.2d at 728. While deliberating on punishment, the jury sent a note to the trial judge asking whether Haliburton's two sentences would run concurrently. *Id.* The judge responded in the affirmative. *Id.* On appeal, Haliburton claimed that he was harmed by the trial court's response. *Id.* A majority of the panel wrote,

> [W]e are unable to presume harm in this situation. Knowledge that the sentences would run concurrently is a two-edged sword. The information could have been used to increase the punishment or, just as easily, used to reduce the number of years to avoid excessive punishment. We cannot determine from the record which path the jury took and, with these alternatives, harm will not be presumed.

*Id.*

Moreover, we generally presume juries follow trial court instructions and will not reverse absent evidence rebutting the presumption. *Colburn v. State*, 966 S.W.2d 511, 520 (Tex. Crim. App. 1998); *see Williams v. State*, 937 S.W.2d 479, 490 (Tex. Crim. App. 1996). In response to the jury's note, the trial court returned the following instruction: "Please do not concern yourselves with this issue. It's a matter to be determined by the Court. Please refer to the charge of the Court and continue your deliberations." Appellant agreed to this instruction

16

and now points to no evidence that the jury disobeyed it. Accordingly, the presumption that the jury followed the court's instruction and disregarded the complained-of remarks stands. We overrule Appellant's fifth point.

## Conclusion

Having sustained Appellant's second point in part and having overruled all of the remaining points, we vacate the trial court's judgment for count one and affirm the judgments for counts two and three.

LEE GABRIEL
JUSTICE

PANEL: LIVINGSTON, C.J.; MEIER and GABRIEL, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: July 14, 2011